Strafford,
No. 4856.

GREAT AMERICAN INDEMNITY COMPANY & a.

*v.*

ARMAND ROUSSELL & a.

Argued November 2, 1960.
Decided December 27, 1960.

126

*Hartnett & Moher (Mr. Hartnett* orally), for the plaintiffs.

*Fisher, Parsons & Moran (Mr. Moran* orally), for the defendant.

LAMPRON, J.  RSA 281:21 which pertains to medical and hospital care under our Workmen's Compensation Law provides that "During the first ninety days after an injury to an employee, an employer subject to this chapter, shall furnish to an injured employee, or cause to be furnished, free of charge, reasonable medical and hospital services . . . when needed . . . Such ninety day period

may be extended from time to time at the discretion of the commissioner of labor upon written request of the injured employee to the commissioner of labor and after the employer has been given an opportunity to file objections thereto and to be heard thereon."

We decided in *Carbonneau* v. *Company*, 97 N. H. 438, that such an extension may be granted after the expiration of the first ninety days following injury. We also held that upon a request for an extension made by the guardian of an employee who had been in a state of coma since his injury, this statute did not authorize the Commissioner to enter a retroactive order for the payment of care previously furnished to this employee.

Plaintiffs take the following position: "The case of *Carbonneau* v. *Company* . . . is decisive of the issue of retroactive extension of medical and hospital benefits; the ninety-day period expired on September 5 or 6, 1956 . . . and no request for extension, written or oral, was filed by Roussell until at least on or after October 6, 1956. Therefore the charges for medical and hospital, totalling $1,492.45 incurred between September 6 and October 6, 1956 must be disallowed."

It is undisputed that Roussell's written request for an extension was not filed with the Commissioner until after the medical and hospital expenses in question had been furnished to him. It was stated in *Carbonneau* v. *Company, supra,* 442, that "Before an extension may be granted there must be a written request, and an opportunity for the employer to object and to be heard. [RSA 281:21]. This requirement was clearly designed for the benefit of the employer . . . The implication of the section is that the Commissioner shall determine what further care the employer shall be required thereafter to furnish, and not what care, previously obtained by the employee, the employer shall be required to pay."

Great American, the employer's insurance carrier, had been informed by Roussell's doctor prior to August 17, 1956 that in his opinion the defendant had a possible ruptured disc. It made an appointment for Roussell to see on August 28 Dr. Maltby, a physician of its choosing, who was told by Roussell that he had been well until June 6, 1956, the date of this accident, and that "he complained of back pain and right leg pain since July 27, 1956." This doctor performed a myelogram and reported his conclusions to Great American.

Under date of September 13, 1956, an attorney for Great American

wrote the following letter to Roussell: "As I explained to you yesterday when I saw you, we have been advised by Dr. Maltby that there was insufficient evidence on your recent examination, which was most complete and included a myelogram, to warrant the diagnosis of a ruptured disc. Furthermore, from our investigation, there is in our opinion, a serious question as to whether your present complaints are connected with the alleged accident of June 6, 1956. Under the circumstances therefore,. we must respectfully advise you that we cannot voluntarily make any compensation payments to you or pay any medical or hospital bills, which of course would include any hospital or medical expense incurred in connection with your proposed visit to the New England Baptist Hospital in Boston this Sunday at the suggestion of Dr. Robert Morris."

On September 14, 1956, Roussell called at the office of the Commissioner of Labor seeking advice. He "wanted to know what rights he had and what course to take." The Commissioner "explained to him the workings of the law, gave him a copy of the law, explained to him fully if he was that bad physically he should tend to his needs immediately." I "told him he ought to go and have the operation irrespective of whether the company was going to pay for it or not."

In the *Carbonneau* case, *supra*, it was sought to impose liability on the employer for medical and hospital services previously rendered without its prior knowledge or that of its insurer or of the Commissioner of Labor. In this case prior to receiving these services, the employee told the Commissioner he intended to seek medical and hospital care. He also informed a representative of the insurance carrier who advised him of its refusal to pay for the services to be rendered.

Great American knew that defendant claimed he was suffering from a back injury received in an accident on June 6, 1956 which arose out of and in the course of his employment by its assured. It had reports of his condition from his doctor as well as from a doctor engaged by it. It knew that he intended to seek further medical and hospital care. It had already notified him that it would not pay the expenses of such care. It is reasonable to conclude that Great American's position was not affected in any material respect by the fact that Roussell consulted the Commissioner in person instead of filing a written request nor by the fact that it was not "given an opportunity to file objections thereto

and to be heard thereon" (RSA 281:21) before these services were rendered.

The Trial Court found that good cause has been shown by Roussell to justify the extension granted by the Commissioner, ruled that he is entitled to such extension and ordered Great American to pay the medical and hospital bills incurred in that period. We are of the opinion this was warranted by the facts of this case.

Plaintiffs maintain that the testimony of Roussell in failing wholly to remember an accident a year prior to this one was incredible or should have been taken into account by the Court in passing on the issue of credibility and that the requests expressly raising the point should have been granted or at least considered rather than being denied. These requests sought to have the Trial Court adopt plaintiffs' interpretation of the evidence and their opinion of the weight to be given to it. The Trial Court having heard and observed the defendant could properly arrive at different conclusions than those urged by plaintiffs. *Dustin* v. *Lewis,* 99 N. H. 404, 406.

There was sufficient basis for the Trial Court to allow certain medical witnesses to give their opinion as to defendant's condition and its cause. Plaintiffs' claim that these opinions were based on an incomplete and inaccurate history did not render the evidence inadmissible but merely affected its weight. *Dowling* v. *Shattuck,* 91 N. H. 234.

We have examined the record as to plaintiffs' objections and exceptions to the admission of evidence of an alleged promise to pay Dr. Sharkey, of certain payments made by Great American, of the knowledge or lack of knowledge of its claims manager as to any intervening accident to Roussell. We considered also their objection to the entire line of questioning as to the claims manager's knowledge and receipt of medical opinions and to certain questions to the Commissioner, to the admission as exhibits of certain of his records as well as the office records of Dr. Sharkey. We find no error which could have prejudiced the plaintiffs.

*Exceptions overruled.*

All concurred.