Hillsborough, ) No. 3566.
Mar. 5, 1946. )

MARY COUGHLIN *v.* ARMS TEXTILE COMPANY.

*Chretien & Craig, (Mr. Craig* orally) for the plaintiff.

*McLane, Davis & Carleton* and *Stanley M. Brown (Mr. Brown* orally), for the defendant.

BRANCH, J. The plaintiff, a spinner in the employ of the defendant, was injured upon June 23, 1941, when she was struck in the back by a bobbin thrown by another employee. The plaintiff described the accident as follows: "Well, we had finished our work, and while we

were waiting for the doffers to doff the frames we had a chance to sit down and rest a little, and I was sitting down with another woman, and while I was sitting there, all of a sudden I felt something hit me in the back, and I happened to look up and saw it fall on the floor and I saw it was a bobbin, and I saw the man on the steam box put his hand over his mouth, and then I knew he was the one that had thrown it. . . . His name was Larry Vachon."

There was evidence that Vachon had been in the habit of throwing bobbins around the room and the plaintiff testified that she had complained to "the boss on the night shift. . . . The boss said he would see about it, but I don't know whether he ever did anything about it. When we complained to him he said he would see what could be done." This testimony was supported by two other employees who testified that they had complained to the boss about Vachon's conduct and received a similar reply. The negligence upon which the plaintiff relies is that the defendant knowingly kept in his employ a dangerous and incompetent fellow servant.

The plaintiff at first attached no importance to the blow in the back which she received, although she felt a persistent pain in her back and was sent to the company doctor who gave her some sleeping pills. About two months after the accident, however, she noticed that her hair was falling out, and in about a year's time all the hair on her person, head, face and body was gone. Competent medical experts testified that the accident was the probable cause of the loss of hair.

The defendant devoted its entire oral argument in this Court to a discussion of the discrepancies between the plaintiff's testimony on the stand and her deposition given some time before. It was claimed that these discrepancies were so important that "as a matter of law the testimony is entirely unworthy of belief," and "defendant contends that the Court below erred in denying defendant's motions for a directed verdict and to set aside the verdict."

We have carefully compared the plaintiff's testimony on the stand with her deposition and see no reason to overrule the principle established in *Coté* v. *Company*, 86 N. H. 238, 241, and *Nason* v. *Company*, 92 N. H. 251, 254, that when a plaintiff is present and testifies in court, he will not be nonsuited upon the strength of inconsistent statements made in a deposition. So far as the present case depended upon the testimony of the plaintiff it was properly submitted to the jury and defendant's exceptions to the denial of a nonsuit and a directed verdict upon the ground that the plaintiff's testimony was incredible, are overruled.

The contention of the defendant that the plaintiff assumed the risk from which her injuries resulted, is equally unsound. It is thus stated in defendant's brief. "The plaintiff knew that bobbins were sometimes thrown around the spinning room, and appreciated the danger inherent in the situation and yet continued to work. These facts, brought out in plaintiff's main case, established, as a matter of law, that plaintiff assumed the risk of the very injury of which she now complains." The answer to this argument is found in the testimony that the plaintiff and other women complained to the boss of the night shift about this practice and "the boss said he would see about it. . . . When we complained to him he said he would see what could be done." This constituted a sufficient promise to repair to bring the case within the principle stated in *Sevigny* v. *Company*, 81 N. H. 311, that "The promise of a master to remedy defects or deficiencies in his instrumentalities relieves the servant of his implied assumption of the risk while he remains at work on the strength of the promise. . . . "

The boss' answer above quoted was precisely the kind of a reply which might be expected from a representative of an employer who was anxious to keep his employees at work in order to avoid a loss of production. Clearly the boss promised to do something about the situation. It may be true that his words, literally construed, promised nothing more than an investigation, but being uttered for the purpose of satisfying the complaints of the plaintiff they are to be construed against the speaker and may fairly be regarded as an undertaking to do whatever the investigation showed to be necessary for the purpose of correcting the danger.

The rule does not require "any express promise or assurance from the master. It is sufficient, if the servant may reasonably infer that the matter will be attended to." 1 Sher. & Red. Neg. (5th *ed.*), s. 215.

Implicit in the above statement of the principle is the requirement that a plaintiff who claims the benefit of it must show "that the inducing motive of his continuance in the employment was his reliance upon the fulfillment of the promise. " 4 Labatt: Master & Servant, s. 1345; *Bodwell* v. *Company*, 70 N. H. 390; *Roy* v. *Hodge*, 74 N. H. 190.

In *Bodwell* v. *Company*, *supra*, "there was no evidence that the plaintiff suggested that the escape of steam made his work more dangerous" and hence it was held that "the promise to repair was not shown to have any connection with the plaintiff's continuance in the employment."

In *Roy* v. *Hodge, supra,* the plaintiff failed to prove any promise to remedy the dangerous condition.

In the present case the plaintiff complained because the practice of throwing bobbins created the precise hazard from which her injury resulted. "Q. Why had you complained about men throwing bobbins around there? A. Because we thought somebody might get hurt sometime. . . . Q. In other words, you knew that you might get hurt if you were in a place where they were throwing bobbins, did you not? A. I didn't know if I might get hit. I didn't think I might get hit but we complained to the boss to have him stop it. Q. Because you were afraid you might get hit? A. Somebody might get hit."

From this, and other similar evidence in the case, it was a permissible inference that the plaintiff continued to work "on the strength of the promise." *Sevigny* v. *Company, supra.*

"When complaining of defective instrumentalities or machinery it is not necessary that the servant shall state in exact words that he apprehends danger to himself by reason of the defects, nor need there be a formal notification that he will leave the service unless the defects be repaired or remedied. It is sufficient if from the circumstances of the case, it can be fairly inferred that the servant is complaining on his own account, and that he was induced to continue in the service by reason of the promise.

"It is ordinarily for the jury to say whether the servant's reliance on a promise by the master induced him to continue work." 4 Labatt: Master & Servant, *supra,* and cases cited.

Defendant concedes that its argument that the plaintiff was guilty of contributory negligence because she "negligently and voluntarily placed herself in a place of known danger" finds its sole support in the deposition of the plaintiff. As stated in its brief, "the statements of the plaintiff upon which the defendant bases this contention were contained in plaintiff's 1943 deposition and were contradicted by the plaintiff herself at the trial of the issue." As pointed out above, the plaintiff was not bound by the statements in her deposition and this contention is, therefore, overruled.

Defendant also argues that plaintiff's injury was caused by the negligence of "a fellow servant for which the defendant is not liable." Obviously the fellow servant rule has no application to a case like the present where the plaintiff's case is based upon the defendant's knowledge of the dangerous propensities of the servant which caused her injuries.

The defendant also argues that "the Court below erred in denying

defendant's motion to strike the medical testimony of plaintiff's experts." The basis of this argument lies in the fact that after the plaintiff's experts had testified that her loss of hair was probably due to the injury which she received, the defendant produced evidence that the plaintiff had suffered a previous injury to her back in 1927. This fact not being included in the hypothetical questions put to the experts, the defendant claimed that their answers should be stricken from the record. *"Mr. Davis:* . . . We ask that the hypothetical questions and the answers to them be stricken from the record on the ground that they do not cover the facts, and if all the facts were stated, it is very likely that a different answer would have been received."

The defendant does not deny that the questions put to the medical experts included all the material facts in evidence at the time the questions were asked. They were, therefore, properly admitted. Defendant's subsequent motion to strike out the testimony presented a question of fact for the decision of the Trial Court, *i.e.* was the fact subsequently disclosed of such importance as to destroy utterly the value of the testimony previously given? By the denial of the motion, the Trial Court ruled that it was not, and no fault can be found with this decision. As argued in the plaintiff's brief: "The old injury, the exact nature of which was never proven, occurred in 1927, about fourteen years before the loss of hair. On that occasion she had apparently slipped on an oily floor and had hurt her back. But for many years before the accident in question in this case she had been perfectly well and until after the accident of 1941 had never noticeably lost any hair. The only possible inference, therefore, is that the accident of 1927 could not have contributed in any way to the loss of hair." The effect of the Trial Court's ruling was that the medical testimony remained in the case for the jury to consider, and as stated in *Boardman* v. *Woodman*, 47 N. H. 120, 135, "The jury can judge whether the case supposed is so far like the one they are considering as that the opinion of the expert on the supposed case is any guide to them in settling the question which they are to decide."

The other questions of law which were transferred have not been briefed or argued by the defendant and are considered to have been waived.

*Judgment on the verdict.*

Burque, J., concurred: Marble, C. J., and Johnston, J., concurred in the result.