Hillsborough, }
Apr. 3, 1951. }  No. 4017.

ROMEO J. ROY *v.* ANTONIO J. LEVY.

*Robert E. Earley, Charles J. Flynn* and *Devine & Millimet* (*Mr. Flynn* orally), for Romeo J. Roy.

*Paul E. Nourie* and *Frederick W. Branch* (*Mr. Nourie* orally), for Antonio J. Levy.

JOHNSTON, C. J. The jury could properly find that R. L., c. 106, s. 3, did not apply as the two vehicles approached and arrived at the intersection of Main and Lake Streets. This depended upon whether Roy could reasonably have believed that he, in the exercise of due care, could pass through the intersection without interfering with the progress of the other car at a reasonable and lawful speed. The driver on the right does not have an absolute right of way. "In short, the invocation of the statute raises an issue of fact in the first instance, namely, whether or not a man of reasonable prudence in the position of the person approaching from the less favored direction would reasonably have concluded that he could pass the intersection without danger of collision." *Gendron* v. *Glidden,* 84 N. H. 162, 168. See also, *Bissonnette* v. *Cheverette,* 87 N. H. 211; *Fitzpatrick* v. *Parsons,* 90 N. H. 458.

There was evidence that Roy had been driving at a low rate of speed for a considerable distance south of Lake Street; that as he approached at about fifteen miles per hour he looked to see if there were any cars coming in the opposite direction; that as he saw the Levy car in the vicinity of Belmont Street, a distance of 150-200 feet away, he turned left, shifted into second, looked again to his right and believed there was plenty of time for him to cross the approximate 23-28 foot distance into Lake Street.

There was testimony from eye witnesses that Levy had been driving at least fifty miles an hour; that he passed another car at Belmont Street; that he covered 150-200 feet from the latter street while Roy went 23-28 feet over the center line in Main Street into Lake Street. There was nothing to obstruct the vision of either driver.

Any error of judgment on Roy's part did not conclusively show negligence. *MacKelvie* v. *Rice,* 92 N. H. 465, 467, and cases cited. The motion for a nonsuit and a directed verdict were correctly denied.

On objection of counsel for Roy, the Court excluded the following question on cross-examination of a witness produced by Roy: "And if he had judged the speed of this other car accurately at that time, which you say was a high rate of speed, he could have waited a matter of just a second before this other car would have proceeded along its way; is that right?" The question called for a mathematical conclusion which the Court could find the jury were as capable of making from the evidence as the witness. *Danos* v. *Company,* 94 N. H. 200. The mere fact that in other cases similar questions have been allowed in the discretion of the Court is immaterial.

Counsel for Levy excepted to the admission of an answer of a medical expert to a hypothetical question because the answer was based upon an assumption that Roy suffered concussion at the time of the accident. It was claimed that there had been no evidence whatsoever of such an injury. The record does not bear this out. A witness of the accident testified that Roy was "in a daze" and that "apparently he didn't know. He could walk all right but apparently he didn't know what he was doing." The expert himself testified that from certain symptoms that Roy had he made the diagnosis of cerebral concussion of some degree. After the answer to the hypothetical question another doctor testified in answer to the question of whether Roy experienced a concussion if right after the accident he was dazed and appeared so: "Yes, if he had that sign." A fact necessary for the putting of a hypothetical question and assumed in the answer may be later furnished. *Chatman* v. *Railroad,* 86 N. H. 317, 319; *Vallee* v. *Company,* 89 N. H. 285, 290.

Another exception was taken to the denial of the motion to strike out the testimony of the same expert that Roy was suffering from a psychoneurosis especially classified as psychasthenia on the ground that he assumed without evidence that the blood tests were negative and the cardiograms were negative. The doctor himself testified that a blood test was "not essential" and that the condition of the heart was "irrelevant" to his conclusions. In view of this testimony the Court was justified in finding that the opinion of the expert might be of some assistance to the jury. The motion to strike was properly denied if any error in the asssumed fact was of trifling or no consequence. The Court could make such finding with respect to the blood tests and cardiograms from the witness' own testimony. "It follows as a necessary part of the theory [relating to hypothetical questions], that if the premises are ultimately *rejected by the jury as untrue,* the testimonial conclusions based on them must also be disregarded. . . . But the failure which justifies rejection must be a failure in some one or more important data, not merely in a trifling respect." 2 Wig. Ev. (3rd *ed.*) 799, 780.

Another motion made by counsel for Levy was that all testimony of Roy relative to complaints of headaches as a resuħt of the accident be stricken on the ground that it was speculative whether they were due to defective eyesight or to the accident. Roy testified in answer to the question whether the glasses that were prescribed for him relieved his headaches: "They did not, sir."

He did not return to the physician whom he had told that the glasses had corrected the headaches, but went to other doctors. The jury could properly find on the evidence that the headaches were due to a brain injury rather than to naturally bad eyesight.

After the verdict was returned, Levy moved that it be set aside as excessive and as against the weight of the evidence. The plaintiff's verdict for Roy amounted to $3,500. Roy lost some three weeks time from his work in all. Damages for lost time, medical expenses and damages to his automobile did not come to over $500. Although Roy was allowed to go home after receiving first aid treatment at the hospital, there was evidence that after the accident he suffered from a severe nervous condition.

Before the accident the testimony was that he was the "life of the party," that he went bowling, dancing, roller skating and was always in good health; that he never had headaches; and that he had never been to a doctor.

With respect to his condition after the accident, there was evidence: That he had headaches even after having glasses prescribed for him; that he had to go home frequently from work with headaches; that he had such a fear of crowds that he would stay at home; that because of his nervous condition he would not enter an ice chest at his place of employment; that he had difficulty in going to sleep for fear that he would not wake up; that he refrained from bowling; that he had a loss of appetite, was unable to sleep and had a slight tremor in his hands.

One medical expert diagnosed Roy's condition as psychasthenia because of the strong presence in him of symptoms of fear. According to this expert, Roy was mentally "undergoing the tortures of Hell" and was very sick mentally. He was of the opinion that it would take seven years or more for Roy to recover from this neurotic condition. Another physician testified that Roy's condition was that of fear neurosis and that in his opinion it was due to the accident. Still another physician gave as his opinion that Roy's nervousness and headaches arose from the accident. It cannot be said as a matter of law that the jury were misled or that the Trial Court in denying the motion to set the verdict aside because the damages were excessive failed to consider intelligently the evidence. "The law for the guidance of the Trial Judge has been stated as follows: 'To justify the interference of the court, the damages must be manifestly exorbitant; and so excessive as to warrant the belief that the jury must have been influenced by

partiality or prejudice, or have been misled by some mistaken views of the merits of the case.' *Belknap* v. *Railroad*, 49 N. H. 358, 371. The consideration of the defendant's motion involved questions of fact for the Judge and his decision should not be set aside unless no reasonable person would make it. *Wisutskie* v. *Malouin*, 88 N. H. 242, 246." *Roy* v. *Chalifoux*, 95 N. H. 321, 324.

There remains for consideration the reason given for the motion to set aside the verdict that it was against the weight of the evidence. From the evidence that has already been stated, it appears that the verdict for the plaintiff Roy was not conclusively against the weight of the evidence and that in denying the motion the Court acted within reason. *Wisutskie* v. *Malouin*, 88 N. H. 242, 246.

*Judgment on the verdict.*

All concurred.