Rockingham,
No. 5669.

LAWRENCE W. GUPTILL, JR., *Adm'r*

*v.*

JOHN T. BERGMAN.

Argued December 6, 1967.
Decided March 29, 1968.

*Burns, Bryant, Hinchey & Nadeau* and *Robert P. Shea* ( *Mr. Shea* orally ), for the plaintiff.

*Boynton, Waldron & Dill* ( *Mr. Richard Dill* orally ), for the defendant.

Duncan, J. This is an action of case to recover damages for the wrongful death of the plaintiff's intestate Eugene A. Schellinger, on September 10, 1963, as the result of injuries sustained on September 8, 1963 at Rye, while he was riding in a borrowed 1962 two-door Pontiac convertible operated by the defendant, a fellow officer at Pease Air Force Base. Trial by jury, with a view, resulted in a verdict for the defendant. Subject to the plaintiff's exception, the plaintiff's motion to set aside the verdict was denied by the Presiding Justice ( *Grant,* J. ). The questions of law presented by this and other exceptions taken in the course of the trial were reserved and transferred.

The major issue presented by the plaintiff's argument relates to the absence of instructions to the jury on the subject of the decedent's alleged intoxication and on the issue of last clear chance. The reserved case states that before the arguments to the jury, the Trial Court informed counsel that he intended to instruct the jury that intoxication of the decedent was not an issue in the case, and also stated that he would not grant the plaintiff's request for a charge on the principle of the last clear chance. The plaintiff's motion to set aside the verdict alleged that by reason of the Court's action, plaintiff's counsel did not argue the question of the decedent's alleged incapacity, or the last clear chance doctrine, and that the plaintiff was thus prejudiced.

As further appears from the reserved case, following the charge to the jury the Court's attention was directed to the "failure to instruct the jury as the Court had informed counsel that he intended to" and the Court then stated that since neither counsel had referred to intoxication in argument, he considered it advisable to refrain from giving the instructions which he had informed counsel he would give.

In support of his exception to the denial of the motion to set aside the verdict, the plaintiff argues that his counsel was misled,

and that in consequence the case was submitted to the jury in violation of the "theory of the case," to the plaintiff's prejudice.

The accident in which the decedent Schellinger was injured occurred shortly after he and the defendant Bergman had left Pease Air Force Base, having spent most of a Sunday at the officers' club there. Both were captains, and navigators in an air-refuelling squadron. The evidence tended to show that they left the club at about 7:20 P.M. on September 8, 1963 with the defendant driving. As the vehicle in which they were travelling rounded a corner from Route 101 onto the Peverly Hill Road, Schellinger complained to his companion that he thought he was "getting ill." The defendant next observed that Schellinger had his head out the window, "hanging out of the car from the waist out." As the defendant pulled the car toward the right-hand side of the road, intending to make a gradual stop, he heard a thud, looked at his passenger as he "slipped back in the car," found that he was "bleeding seriously" from the head, and immediately took him to a hospital. Schellinger's injuries were suffered when his head struck a mailbox at the edge of the paved shoulder on the right-hand side of the road, some two hundred fifty feet beyond the turn into Peverly Hill Road.

The evidence bearing upon the decedent's condition prior to the accident came primarily from the defendant. He testified that after arriving at the club at 11:30 A.M., both he and Schellinger had breakfast, and later had some beer to drink, watched television, and visited with others present. At some time during the day they each had had some mixed drinks, although they were not together at that time. They left the club at about 7:20 P.M. The defendant testified that he was not affected by what he had had to drink, but that Schellinger was "high," by which he meant that he was "a little bit silly and a bit more jolly at the club than he might normally be."

Schellinger's former wife, who had been at the officers' club for brunch on this same Sunday, testified that she had talked with him at sometime before she left at 3:15 P.M. and that his condition was "fine." There was no other evidence concerning the decedent's condition beyond the evidence that he was taken ill after leaving the base.

No record was made of the conference between Court and counsel which preceded the arguments to the jury. In passing upon the plaintiff's exception to the denial of his motion, we are limited

in our information concerning what transpired at this conference by the statements contained in the reserved case and by the record of the hearing on the motion. Referring to what had occurred at the conference, the Court stated at the hearing on the motion that a "fair interpretation could have been that I was going to give the jury instructions that intoxication was withdrawn from their consideration . . . . I also indicated the numbers [of the plaintiff's requests] that I wasn't going to give which included the last clear chance request, Request No. 12."

The record suggests that the issues of intoxication and last clear chance did not assume major importance until after the verdict for the defendant was returned. The record discloses no exception to the Court's preliminary ruling, in conference, that the issue of intoxication would be withdrawn. No exception was taken, following the instructions to the jury, to the Court's failure to withdraw this issue. No exceptions were taken to the ruling that the last clear chance would not be submitted, or to denial of the plaintiff's several requests for instructions on that doctrine. When plaintiff's counsel excepted "to the Court's charge insofar as [his] requests were not given in form or substance by the charge, and insofar as the charge [as] given . . . was inconsistent with plaintiff's requests," the Court immediately requested him to specify the requests by number. See *Lynch* v. *Sprague,* 95 N. H. 485. Counsel then enumerated certain requests in sequence, commencing with request 18 which dealt mostly with issues relating to damages. His requests bearing upon the issues of intoxication and last clear chance, contained in requests 4 through 15, were not specified.

The issue of intoxication was of consequence to the plaintiff both on the issue of contributory negligence of his intestate, and as a foundation for his requests relating to the last clear chance. Relying upon the opinion in *Wheeler* v. *Railway,* 70 N. H. 607, his fourth request and requests 6 through 9 sought instructions to the effect that contributory negligence was not an issue because the "plaintiff's decedent, to the defendant's knowledge, [was] incapacitated from exercising any care." ( Request 4 ).

Likewise, requests relating to last clear chance rested upon an assumption that Schellinger was incapable of exercising care for his own safety because of his intoxicated condition. Thus the plaintiff's twelfth request, which the Court had indicated would not be given, was as follows: "( 12 ) The defendant had the last

clear chance to avoid and prevent the accident but failed and neglected to do so. The plaintiff is, therefore, entitled to recover. *Small* v. *Railroad,* 85 N. H. 330." This was further refined in request 13: "Even if you find that decedent was negligent in becoming intoxicated, and hence was in fault for creating his danger, if you find that decedent was too irresponsible to be able to use care to save himself, such negligence on the part of decedent in creating the situation is regarded as remote, and if you find that the defendant, by the exercise of ordinary care, could have averted, avoided or prevented the accident, after the decedent's peril was, or should have been discovered by defendant, then defendant's conduct becomes the sole proximate cause of the accident, and the plaintiff is entitled to recover. *Small* v. *Railroad, supra.*"

If we assume that the plaintiff argued his case in the expectation that the issue of intoxication would be withdrawn from the jury and thus remove the possibility of a finding of contributory negligence on that account, it was certainly open to him to except to the Court's failure to withdraw the issue. This counsel did not do, although such an instruction might have benefited the plaintiff since the issue of last clear chance was not submitted.

The Court did deny the plaintiff's twelfth request, as well as eight requests preceding it and three which followed, all of which bore upon these two issues. In the light of present arguments, exception to the denial of these requests would be expected; yet no exception was taken.

"The general exception to denial of the plaintiff's requests 'except in so far as they were covered by the charge' presents no clear issue for determination here . . . . It does not serve to call any specific error to the attention of the Trial Court in season for correction, and leaves the excepting party free after the trial to search for defects in the charge not previously thought significant. Accordingly, we hold such an exception to be insufficient to present any question for determination by this court . . . ." *Downie* v. *Proctor,* 101 N. H. 1, 3. Here the plaintiff's exceptions must be taken to have been waived. They cannot be revived through the process of a motion to set aside the verdict. "Having elected 'to go on with the trial and obtain a favorable verdict if [he] could' ( *Lyman* v. *Brown,* 73 N. H. 411, 413 ), the plaintiff waived his right . . . [to except and] should not now be heard

to complain of the course which he elected." *LePage* v. *Company,* 97 N. H. 46, 52. See *Perry* v. *Faulkner,* 100 N. H. 125.

The plaintiff's further contention that the verdict was contrary to the evidence and the weight of the evidence cannot be adopted. The plaintiff took no exception to denial of his request for an instruction withdrawing the issue of contributory negligence from the jury. If it were now open to him to question submission of this issue, we would not hold that the decedent's conduct in leaning far out of the open window of the moving vehicle was not evidence of negligence. See, *Rudolph* v. *Lavigne,* 92 N. H. 490. *Cf. Piateck* v. *Swindell,* 84 N. H. 402.

The issue of the defendant's negligence was clearly for the jury. However it could be found that he was faced with the necessity of stopping his vehicle without throwing his passenger out of it, or at least it could be found that he reasonably believed this to be so. Whether he was negligent in failing to stop sooner, or to see the mailbox under existing conditions when his attention was diverted by the plight of his passenger, or was careless in pulling to the side of the road without allowing sufficient clearance between objects at the side of the road and the passenger who projected outside the vehicle, were questions upon which a difference of opinion might reasonably exist. *Vandell* v. *Sanders,* 85 N. H. 143. The evidence was not so preponderantly in favor of the plaintiff that the verdict for the defendant may be set aside. *Powell* v. *Gagne,* 102 N. H. 256; *Condiles* v. *Waumbec Mills,* 95 N. H. 127; *Wisutskie* v. *Malouin,* 88 N. H. 242. Accordingly, the plaintiff's exception to the denial of the motion to set the verdict aside is overruled.

The plaintiff's exceptions to evidentiary rulings present no ground for reversal. The Trial Court properly permitted the plaintiff to use the "Old Farmers' Almanac" to establish that the sun set on the day of the accident at 6:08 P.M. Standard Time. *Munshower* v. *State,* 55 Md. 11; VI Wigmore on Evidence ( 3d *ed.* ) *s.* 1698. See also, *LePage* v. *Theberge,* 97 N. H. 375, 378;. *People* v. *Harkness,* 51 Cal. App. 2d 133, 138; IX Wigmore, *supra s.* 2566 ( 4 ). We do not assume that the jury was so unfamiliar with the effect of daylight saving time as to require the the Court to instruct the jury that the evidence thus received meant 7:08 P.M. Eastern Daylight Saving Time, as requested by the plaintiff's 25th and 26th requests for instructions.

The plaintiff offered to show by the same almanac that twilight on the day in question had a duration of one hour and thirty-three minutes after sunset. To the exclusion of this evidence, the plaintiff excepted. We think the exclusion was discretionary with the Trial Court. There was direct evidence that the weather was "cloudy-clear," and that fog patches had been encountered beyond where the accident happened. There was also evidence that the defendant operated with his lights on low beam from the time he and Schellinger left the officers' club. The defendant testified that this was approximately 7:20 P.M., Portsmouth time, and conceded that twilight would precede dark. The evidence did not disclose how much time was consumed in reaching the scene of the accident, although the defendant thought the scene was about two miles from the club. In this state of the record, we are not prepared to hold that the Court erred in considering that evidence of the length of twilight as reported by the "Old Farmers' Almanac" would not add materially to the jury's common knowledge, or aid them in reconstructing existing conditions as to which they had direct evidence before them.

The plaintiff excepted to receipt in evidence of a plan of the scene of the accident and approaches thereto, which bore insertions showing the mailbox and its dimensions, and a "profile" of the side of the automobile indicating various heights in relationship to the mailbox. The Court could properly find that this would probably aid the jury. *Paine* v. *Hampton Beach &c. Co.,* 98 N. H. 359, 366. The plaintiff was not prejudiced by the exhibit. It was made plain to the jury that the positions of a vehicle on the highway as shown on the plan did not purport to be factual but "were assumed." It does not appear that these positions were at variance with the evidence, and the plaintiff was permitted to show that the weight of occupants and the slope of the road would affect the relative heights of the car and the mailbox.

The plaintiff excepted to the denial of his requests 18 through 23 bearing upon the assessment of damages, and in particular "capacity to earn," as an element thereof (RSA 556:12; *Pierce* v. *Mowry,* 105 N. H. 428, 431), and as distinguished from the decedent's probable savings. *Imbriani* v. *Anderson,* 76 N. H. 491. Ordinarily these exceptions would be immaterial in view of the verdict for the defendant. In this case, however, the plaintiff argues that the Court's failure to grant certain of these requests influenced

the jury to return the verdict for the defendant. This result is said to have arisen because evidence concerning the administration by the decedent's former wife of funds held by her as guardian for his children may have influenced the jury against her, and "the jury was not adequately instructed concerning who was plaintiff."

The charge to the jury, however, made it amply plain that the decedent's administrator was the plaintiff, and that the estate brought the action. The jury was twice told that neither the former wife nor the decedent's children were plaintiffs. It was also told that the decedent's capacity to earn money was an element of damage. It is not perceived how the requested instructions would have tended to avert any possible misconception that the former wife would benefit from a plaintiff's verdict. The record contains nothing to suggest that prejudice against her may have motivated the verdict returned. We conclude that the verdict should stand, and the order is

*Judgment on the verdict.*

All concurred.