Strafford,
No. 5853.

RALEIGH CANNEY

*v.*

TRAVELERS INSURANCE COMPANY.

June 30, 1970.

*Flynn, Powell & McGuirk* and *Catalfo & Shea* and *Charles F. Dalton, Jr.* ( *Mr. Russell H. McGuirk* and *Mr. Dalton* orally ), for the plaintiff.

*Burns, Bryant, Hinchey & Nadeau* and *Ross V. Deachman* ( *Mr. Deachman* orally ), for the defendant.

PER CURIAM. Raleigh Canney, the original plaintiff, now de-

ceased, was covered by a group accident and dismemberment insurance policy issued by defendant. The policy provided that the loss of a leg or other member must be caused by accidental, violent and external means, independently of all other causes. Canney's right big toe was injured on August 27, 1963 when a stove cover accidentally fell on it. The toe became infected and the right leg had to be amputated below the knee because it had become gangrenous. Canney had been a diabetic for many years. The question at the trial was what caused the loss of the leg. The jury found that the loss was caused by the accident and not by an existing disease or physical condition such as diabetes or arteriosclerosis. *Grant,* J. awarded damages of $50,000, the amount of the liability under the policy, and reserved and transferred the defendant's exceptions thereto.

There was conflicting expert medical testimony. On the grounds that the hypothetical question was improper the defendant attacks the testimony of the plaintiff's expert that the loss of the leg resulted from the injury rather than plaintiff's physical condition. Defendant also attacks the verdict as being against the evidence and against the weight of the evidence.

As a general proposition, the admission, form and content of a hypothetical question are questions for the discretion of the trial court. Keller, The Hypothetical Question, 3 N.H.B.J. 138, 140 (1961). The trial court's inquiry into opinion evidence is whether the question and answer will aid the jury. *Draper Corp.* v. *Pitman,* 97 N.H. 1, 4, 79 A.2d 833, 834; *O'Haire* v. *Breton,* 102 N.H. 448, 450, 159 A.2d 805, 807; *Dowling* v. *Shattuck,* 91 N.H. 234, 17 A.2d 529; 7 N.H.B.J. 365.

Defendant first claims that the assumptions in the hypothetical question were inconsistent with plaintiff's evidence. Defendant relies on the principle that facts assumed in the hypothetical must be supported by the evidence and resemble the case before the jury. *Boardman* v. *Woodman,* 47 N.H. 120; *Connell* v. *Company,* 93 N.H. 244, 40 A.2d 743. The first alleged inconsistency is the assumption that Canney had had no difficulty with his lower extremities. The Wentworth-Douglass Hospital records of May 1962 contain statements of Dr. Manning, the treating physician, that Canney had complained of pains in his legs and that the patient "showed some diabetic neuropathy in his lower legs."

These hospital records and the hypothetical do not necessarily conflict. The hypothetical assumed that "he was having no ap-

parent difficulty with the *circulation* in his extremities." ( Emphasis added ). Dr. May was aware of the hospital records relating to "diabetic neuropathy." He explained this as nerve pain which was not related to the severity of the diabetes. Also the implication was that it was a nerve problem and not a circulation problem. Although testimony on the significance of diabetic neuropathy came after the framing of the hypothetical question and from the same expert who answered the hypothetical, it can be sufficient to uphold the hypothetical on appeal. *Roy* v. *Levy,* 97 N.H. 36, 38, 79 A.2d 847, 850; *Fitzpatrick* v. *Public Service Co. of N. H.,* 101 N.H. 35, 131 A.2d 634.

Benjamin Canney, son of the deceased, testified that his father had had no trouble with his legs or feet. Approximately 1 1/2 years before the accident a slight cut on Raleigh Canney's foot had healed without difficulty. Plaintiff's exhibit 4 contained hospital records for June 1962 which stated that the extremities were "essentially within normal limits." "Where the facts are undisputed as to a particular point which should be covered in the question in order that the witness may give an opinion of value, then those facts should be included; however, where the facts are in dispute as to any such point, then, although the questioner should still cover that point, he may elect which evidence on that point to include." Keller, 3 N.H.B.J. 138, 142. Defendant's objections to the factual assumptions in the hypothetical involve disputed factual issues. Plaintiff was entitled to select the evidence on these facts favorable to his case. 2 Jones on Evidence 784-85 ( 5th ed. 1958 ). The resolution of the factual dispute was left to the jury.

Defendant's expert, Dr. Demopoulos, testified that when he treated the deceased for gangrene there was poor circulation in the lower leg. Plaintiff can select evidence to support his theory in phrasing a hypothetical. Also, the evidence received after the hypothetical does not necessarily destroy its value. The question and answer will stand if the trial judge in his discretion finds as a fact that the opinion would have some value to the jury. *Coughlin* v. *Company,* 94 N.H. 57, 61, 46 A.2d 130, 133. "The jury can judge whether the case supposed is so far like the one they are considering as that the opinion of the expert on the supposed case is any guide to them in settling the question which they are to decide." *Boardman* v. *Woodman,* 47 N.H. 120, 135; *Coughlin* v. *Company,* 94 N.H. 57, 61, 46 A.2d 130, 133. Expert opinion based on incomplete or inaccurate medical history

is not necessarily inadmissible. Any discrepancy in the basis for the opinion would affect the weight rather than the admissibility of the evidence. *Great American Ind. Co.* v. *Roussell,* 103 N.H. 125, 130, 166 A.2d 866.

Defendant next contests plaintiff's assumptions that the deceased had been able to work regularly while a diabetic for at least ten years. Under cross-examination Dr. May stated that in this case whether Canney had been a diabetic for ten years or eighteen years was irrelevant. In *Roy* v. *Levy,* 97 N.H. 36, 79 A.2d 847 the court upheld the denial of a motion to strike certain expert opinion evidence given in response to a hypothetical question. The hypothetical was allegedly based upon the assumption without evidence that certain blood tests and cardiograms were negative. However since the expert doctor himself testified that a blood test was not necessary and that the condition of the heart was irrelevant to his opinion, any insufficient basis in the evidence for the assumption became "of trifling or no consequence." *Roy* v. *Levy,* 97 N.H. at 38, 79 A.2d at 850.

Dr. May explained on cross-examination how he understood the hypothetical on the issue of regular work. Although the decedent had been hospitalized several times, Dr. May felt that he had not been hospitalized because of diabetes. The cross-examination on this point was exhaustive. The jury should not have been confused as upon what Dr. May based his opinion. Also Benjamin Canney testified that his father had "worked every day."

Cross-examination is the recommended method for an opposing party to accurately establish and test the basis of an expert opinion. McCormick, Some Observations Upon the Opinion Rule and Expert Testimony, 23 Tex. L. Rev. 109, 126 (1945). Several authorities on the rules of evidence have even advocated completely abolishing the hypothetical question and relying entirely on cross-examination to establish the basis of an expert's opinion. For example: 2 Wigmore on Evidence 686 (3d ed. 1940); McCormick, 23 Tex. L. Rev. 109, 129. Defendant used effective cross-examination to clarify the basis of the expert's opinion even if the basis was not sufficiently clear originally.

Defendant objects to the assumption in the hypothetical question that Raleigh Canney's diabetes was under control. This was however, the theory of plaintiff's case and there was evidence to support it. Benjamin Canney, the deceased's son, testified that the deceased followed his testing and insulin routine daily. He

testified that the deceased worked every day. The medical records show several hospital stays during which the diabetes was out of control. Reference was also made to these uncontrolled periods in the hypothetical question. But Dr. May explained these instances as a result of a urinary infection which was the primary cause of the hospital admission.

All of the hospital records were introduced into evidence before Dr. May answered the hypothetical question. The cross-examination on the question of what the hospital records showed to be the cause of admission was thorough. The jury could see the records and knew the statements upon which Dr. May based his opinion.

The presiding justice saw the question of whether the diabetes was uncontrolled as a disputed factual issue. As indicated above such factual disputes are to be resolved by the jury. As long as there is evidence to support the assumptions and the trial court finds that the hypothetical will aid the jury, the hypothetical is proper.

Defendant's second principal contention is that the hypothetical question was improper because it referred to all the hospital records without specifying which facts in the records were relied upon. Thus the jury would be unable to tell upon which facts Dr. May relied in giving his opinion. However, the propriety of incorporating other evidence by reference in the hypothetical rests within the discretion of the trial court. Keller, 3 N.H.B.J. 138, 141; 2 Wigmore on Evidence s. 681, at 803 ( 3d ed. 1940 ). On the specific issue of hospital records, " good reason often exists for incorporating a hospital record into the question by reference, where the record is an exhibit . . . . " Keller, 3 N.H.B.J. 138, 141. Cases supporting plaintiff's use of the hypothetical question in this case are *Twombley* v. *Fuller Brush Co.,* 221 Md. 476, 158 A.2d 110 and *State* v. *Fishel,* 228 Md. 189, 179 A.2d 349.

Defendant relies on 2 Wigmore on Evidence s. 681, at 800 for the proposition that data upon which a hypothetical is based be particularized. However, later in the same section Wigmore states that whether the incorporation of other evidence by reference rather than restatement fulfills this requirement of particularization is a question for the discretion of the trial judge. 2 Wigmore on Evidence s. 681, at 805 ( 3d ed. 1940 ). The presiding justice consciously and carefully exercised that discretion.

Dr. May gave explanations for all alleged discrepancies within the records and between the records and plaintiff's evidence raised by defendant on cross-examination. The jury did not have to accept these explanations, but they apparently did. The presiding justice must have decided that the hospital records were not so contradictory nor extensive as to confuse the jury as to the factual basis for Dr. May's opinion.

Defendant's final contention is that the verdict should have been set aside as being against the evidence and against the weight of the evidence. There was evidence to support all of the important assumptions in the hypothetical question. Thus if the jury found all of this evidence favorable to the plaintiff's theory to be true, Dr. May's opinion probably carried great weight. The "jury can accept the testimony of the expert offered by one party and reject that of the experts offered by the other." *O. K. Fairbanks Co.* v. *State,* 108 N.H. 248, 252, 234 A.2d 108, 111. *See Eichel* v. *Payeur,* 107 N.H. 194, 219 A.2d 287; *Guptill* v. *Bergman,* 108 N.H. 507, 240 A.2d 55.

Defendant contends that there was uncontradicted evidence that Raleigh Canney suffered from arteriosclerosis and that this disease prevented sufficient blood from reaching the injured toe to enable it to heal. But as pointed out above, there was evidence that Raleigh Canney had no trouble with his feet. A prior cut had healed without difficulty. Hospital records indicated that the extremities were essentially within normal limits. The pathologist testified that the infection was "moist gangrene." Dr. May testified that infection rather than loss of circulation is "more the contributing cause" of moist gangrene. Dr. May also indicated what weight he gave to the pathologist's report and upon what he based his opinion.

Since there is evidence to support the jury verdict, the ruling by the presiding justice that the verdict was not against the weight of the evidence is sustained. *Wisutskie* v. *Malouin,* 88 N.H. 242, 186 A. 769.

*Judgment on the verdict.*