Grafton,
No. 6122.

IRENE LONEY, mother and next friend of NANCY TOWLE

*v.*

DANA PARSONS.

IRENE LONEY *v.* DANA PARSONS.

December 7, 1971.

*Snierson, Chandler & Copithorne (David M. Copithorne* orally ) for the plaintiffs.

*L. Wilder Quint* and *Eugene S. Daniell, Jr. ( Mr. Quint* orally ) for the defendants.

GRIMES, J. This automobile accident case was tried by jury with a view, resulting in a verdict for Nancy Towle in the amount of $250,000 and for Irene Loney, Nancy's mother, in the amount of $25,000 for consequential damages.

The trial court denied motions to set aside the verdict, for judgment for the defendant notwithstanding the verdict, and for a new trial in the case of Nancy Towle; but granted the motions to set aside the verdict and for a new trial in the case of Irene Loney unless the plaintiff filed a remittitur to reduce the verdict to $10,000. Defendant's exceptions to the denial of these motions and all exceptions taken during trial were transferred by the Presiding Justice, *Grant,* J.

The accident occurred just after midnight on July 25, 1967 on Route 3-A in Bristol. This is a two-lane highway with a breakdown lane or shoulder on each side. Nancy Towle, then age 17, was riding in the front seat of a vehicle operated by Dana Parsons travelling southerly which collided with a vehicle travelling northerly operated by one Walshaw. The point of contact between the two cars was right front to right front about the middle of the southbound lane. The Parsons car left brake marks 29 feet long, which angled toward the center line of the road with the lefthand mark ending near the center line. The Walshaw car left no brake marks prior to the impact. Both Dana and Nancy testified they had no recollection of the events just prior to the accident because of amnesia due to their injuries.

Walshaw testified that as he was proceeding northerly in his own lane after having passed another car, he saw the Parsons car

coming at him on the wrong side of the road, that he turned left to attempt to avoid it, and that it "seemed" as though the Parsons car turned toward his (Walshaw's) left also. He said the Parsons car was about 450 feet from him when he first saw it and that he immediately turned left. There was evidence that Walshaw had been drinking and that a test of his blood extracted about an hour after the accident showed alcohol content of 0.15%.

Defendant claims that the evidence is such as to show that it would be a physical impossibility for the accident to have occurred as claimed by Walshaw, that his testimony was as a matter of law unbelievable, and that there was no credible evidence to support a finding that defendant was at fault. The trouble with this contention is that plaintiffs did not rely upon Walshaw's version of the accident to establish defendant's fault. There was evidence from the driver of the vehicle which Walshaw had passed just prior to the accident that Walshaw never returned to the northbound lane thereafter. If the jury accepted this evidence, then defendant was faced with a vehicle coming at him on the wrong side of the road. There was evidence that 400 feet north of the point of collision, a driver could see a point 350 feet south of the point of collision or a total of 750 feet. It was the contention of the plaintiffs that under these conditions the defendant was negligent in not applying his brakes before he got to within 29 feet of the point of collision or in not turning to the right or left in time to avoid the collision. The evidence would support a finding of fault on the part of the defendant whichever version of the accident the jury accepted, and the defendant's motions for nonsuits, directed verdicts, and judgment notwithstanding the verdicts were properly denied.

Defendant claims to have been prejudiced by a remark of the court during the charge when, referring to Walshaw, the transcript contains the following: "I *don't* think there has been evidence tending to establish his failure to act properly — to have acted properly." (Emphasis added). The court then, however, proceeded to mention evidence tending to prove Walshaw's fault and stated that this action was against Parsons, "the allegation being he too was at fault." In view of the arguments of counsel at the trial, the court's charge as a whole and the absence of any exception to the charge on this point we are convinced that the word "don't" in the transcript was a typographical error.

Defendant contends that the court erred in not instructing the jury on the instinctive action part of the emergency doctrine.

*See Allen* v. *State,* 110 N.H. 42, 47, 260 A.2d 454, 458( 1969 ). The defendant made no request for the instinctive action portion of the emergency doctrine and took no exception to the charge on this point. The court did charge the jury on the emergency doctrine in accordance with the language of the defendant's requests which, although the word instinctively was used, nevertheless would leave it to the jury to determine whether the defendant acted negligently.

Defendant claims to have been prejudiced because he was prevented by reason of adjournment at about 4 o'clock on Friday afternoon from presenting the evidence of two witnesses who were available in the courtroom. They were one Desisle and his wife, who were the occupants of the car passed by Walshaw just prior to the collision. At the time of adjournment, the direct examination of Nancy Towle had just concluded. Cross - examination was yet to come and the plaintiff had not yet rested. The trial court could reasonably conclude that the evidence of these witnesses could not have been concluded at any reasonable hour that day, considering the size of the county and the distances jurors and others would have to travel thereafter. The decision was one which was within the discretion of the trial court and we cannot say on the record before us that there was any abuse of that discretion. *McKinney* v. *Riley,* 105 N.H. 249, 197 A.2d 218 ( 1964 ); Rosenberg, Judicial Discretion of the Trial Court, Viewed from Above, 22 Syracuse L. Rev. 635 ( 1971 ).

The defendant, following the weekend recess and conclusion of plaintiff's case, introduced the deposition of Mr. Desisle. The testimony of Mrs. Desisle was not offered in any form nor was her absence accounted for. The defendant could have subpoenaed both these witnesses if he had chosen to do so, but having elected not to do so, he cannot now be heard to complain that he was deprived of their presence in court. In any event, considering the physical evidence and the argument of plaintiff's counsel which was largely predicated on Walshaw's being on the wrong side of the road, we cannot say that defendant was prejudiced by his failure to have had the Desisles testify on the witness stand.

A further claim is that the jury was prejudiced, both on the issue of liability and damages, by irrelevant evidence and inflammatory argument of plaintiff based on that evidence. This evidence related to the fact that, although the couple had been going steady for about a year prior to the accident, Dana broke up with her following her return home from the hospital and subse-

quently married another girl. There was evidence regarding what counsel called the irrational way Nancy reacted to the breakup and marriage. There was medical evidence that Nancy suffered brain damage which resulted in personality changes, irrational behavior and emotional lability. In his argument, plaintiff's counsel referred to Nancy's reaction to the breakup with Dana and his marriage as irrational and as further evidence of brain damage. No exceptions were taken to this argument at the time of trial and no cautionary instructions were requested. The evidence and argument was not irrelevant to the question of Nancy's condition although it may also have caused some unfavorable feelings against Dana.

Defendant's final contention is that the verdict of $250,000 for Nancy was manifestly excessive. It is suggested that the fact the verdict for $25,000 for consequential damages on evidence of medical bills and expenses plus some probable future expense which would not by any means exceed a total of $10,000 was found to be excessive and was reduced indicates that the jury gave excessive damages to Nancy also.

The injuries sustained by Nancy were substantial. She suffered a severe head injury, compound fracture of the right thighbone, fracture of the left thighbone, fracture of the inside of both ankles, multiple bruises all over her body, a burn on her right calf necessitating a skin graft, and a fracture of the left clavicle. She spent about 14 weeks in hospitals and underwent several operations. For the first five weeks, she was irrational and disoriented, and the hospital record indicates many expressions of pain and suffering. She had a shortening of both legs, one more than the other, and a 25% disability in both. She is left with scars on her legs, and because of brain damage temporarily suffered personality changes, emotional lability and impairment of mental functions. She cannot do "heavy manual labor or do vigorous climbing."

However, the differential shortening of the legs does not cause her to limp except occasionally and this can be corrected by a lift in one shoe. The evidence shows that her residual brain damage was improving and the prognosis is good. Recovery is expected within three years from the accident, but might require five years. She has been steadily employed beginning about a year after the accident and her limitations do not interfere with work she is likely to do. When last examined she had no complaints, felt she was perfectly well and was "oriented in all spheres."

We think the verdict is excessive. We recognize that this court should not interfere with a verdict except in a clear case. We believe, however, that this is such a case. The fact that a verdict in the action of Mrs. Loney was one and one-half times more than was warranted by the evidence is an indication that the jury may have been mistaken on damages in both cases.

It is true that we are not in the same position as the trial judge and we should give great weight to his decisions and we do. There are times we think when the considered unanimous judgment of an appellate court on the record before it that a verdict is excessive requires it to act. We are of the opinion that this verdict exceeds any rational appraisal of the damages, that the evidence could not justify a verdict in excess of $190,000, and that it would be a denial of justice to permit the verdict to stand. 5 Am. Jur. 2d Appeal and Error *s.* 836, at 279 ( 1962 ); 22 Am Jur. 2d Damages *s.* 366 ( 1965 ). We therefore remand the case for a new trial unless the plaintiff Nancy will accept a reduction in the verdict to $190,000.

*Remanded.*

GRIFFITH, J., dissented in part; the others concurred.

GRIFFITH, J., *dissenting in part*: I agree with the majority of the court that the verdict of $250,000 for Nancy Towle appears excessive on the record before us. Were I acting on this record as a trial judge I would seriously consider setting the verdict aside or ordering a remittitur as a condition of the plaintiff keeping a verdict. My inability to concur with the action of the majority here stems from the fact that the record before us does not put us in the position of the trial judge. I note that in two previous cases where this court has reduced a verdict we were in the practical position of the trial judge as the initial reviewing authority with a complete record on damages. *Belknap* v. *Railroad*, 49 N.H. 358 ( 1870 ); *Pierce* v. *Mowry*, 106 N.H. 306, 210 A.2d 484 ( 1965 ).

I respectfully suggest that we lack the "tools" ( *Pike* v. *Scribner*, 103 N.H. 203, 205, 168 A.2d 114, 115 ( 1961 ) ) to make the reduction the majority orders in this case. The injuries to Nancy Towle included scarring, crippled legs and substantial brain damage. Her speech, movements, physical appearance and demeanor as observed during the trial may properly have been a

substantial factor in the decision of the trial judge that the verdict was not excessive. Under these circumstances we act upon an incomplete record. Rosenberg, Judicial Discretion of the Trial Court, Viewed from Above, 22 Syracuse L. Rev. 635, 664 ( 1971 ). I am unable to say, on this incomplete record, that the decision of the trial judge upholding the verdict was one " no reasonable person would make. " *Roy* v. *Chalifoux*, 95 N.H. 321, 324, 63 A.2d 226, 228 ( 1949 ); *Roy* v. *Levy*, 97 N.H. 36, 40, 79 A.2d 847, 851 ( 1951 ). Neither can I estimate a verdict that would set the limits of his reason.

I understand this decision is at most a disposition of the present case and is not a precedent for routine reduction of alleged excessive verdicts by this court. The latter would, I fear, run counter to our previous encouragement of trial judges to exercise in a meaningful way their duty " [t]o inspect the product " of a jury to determine whether the result was fair. *Wisutskie* v. *Malouin*, 88 N.H. 242, 245, 186 A. 769, 770 ( 1936 ); *Hayes* v. *State*, 109 N.H. 353, 355, 252 A.2d 431, 433 ( 1969 ). In any event I do not think this decision " will make trial judges' duties any easier or their future performance any better. " Kenison, C.J., dissenting in *Fortuna* v. *Fortuna*, 103 N.H. 547, 551, 176 A.2d 708, 711 ( 1961 ).