Rockingham
No. 6854

ALVIN GREENLAND & a.

v.

FORD MOTOR COMPANY, INC. & a.

EAST DERRY GARAGE INC.

v.

FORD MOTOR COMPANY, INC.

October 31, 1975

*Burns, Bryant, Hinchey, Cox & Shea (Mr. Paul R. Cox* orally) for the plaintiffs.

*Devine, Millimet, Stahl & Branch (Mr. Matthias J. Reynolds* orally) for the defendant.

*Wadleigh, Starr, Peters, Dunn & Kohls* and *James C. Wheat (Mr. Wheat* orally) for East Derry Garage, Inc.

GRIFFITH, J. These are product liability actions brought by the plaintiffs to recover damages for death, personal injuries, property damages and loss of consortium resulting from an accident on October 19, 1966, on Route 101 in Bedford. The initial actions sought recovery from the Ford Motor Company and East Derry Garage, Inc., on the basis of negligence, breach of express and implied warranties, misrepresentation and strict liability. East Derry Garage, Inc., filed a third-party action against Ford Motor Company, seeking indemnity for any judgment rendered against it in the actions of the Greenlands plus reasonable attorney's fees and costs and this was consolidated for trial with the other actions.

Trial by jury began June 5, 1972, at which time the plaintiffs had waived all liability claims against the East Derry Garage except that grounded on strict liability and relied solely on the grounds of negligence and strict liability in their claims against Ford Motor Company. Ford Motor Company initially refused the request of East Derry Garage to assume the defense but did so after five days of trial; the then plaintiffs dismissed their cases against East Derry Garage, Inc. The jury returned verdicts for the defendant Ford Motor Company in all actions. The Trial Court *(Morris,* J.) reserved and transferred the exceptions of the plaintiffs including those to the denial of their motions for a new trial. The trial court also transferred the exception of East Derry Garage, Inc., to the denial of its motion for reimbursement from Ford Motor of its reasonable attorney's fees from June 5, 1972, to June 12, 1972.

Alvin and Helene Greenland on February 23, 1966, purchased a 1966 Mercury Comet Caliente from the East Derry Garage. The car, which had been briefly used as a salesman's demonstrator, had been sold to the Greenlands as a new car. On October 19, 1966, Helene Greenland was on her way in the car to Milford to pick up her husband, Alvin, who taught school there. In the car with Helene were five-month-old Margie Sue, who died as a results of injuries sustained in the accident, six-year-old Bruce, and three-year-old Eric. It was a very rainy day and as Mrs. Greenland came around a gradual curve at approximately forty to forty-five miles per hour, she skidded, crossed over into oncoming traffic and collided with a two-and-a-half-ton truck coming downhill in the opposite direction. The impact of the collision was so severe that the front end of the Greenland vehicle was sheared off at the fire wall. Helene Greenland testified she had no recollection of the accident and the only testimony as to the events preceding the accident came from Mr. Francis Leary, the operator of a vehicle following the Greenland car, and Mr. Joseph Thibeault, the driver of the truck in the collision. Mr. Leary testified the Greenland car skidded without apparent reason and that he saw no application of brakes or change in speed prior to the impact. Mr. Thibeault testified that Mrs. Greenland did not appear to have any trouble operating her car before it suddenly spun out in front of his truck.

The liability claim of the plaintiffs centered on an allegation that the accident was caused by a metallurgical defect in a pin or stud in the ball and socket assembly of the right front wheel. Experts for the plaintiffs testified that in their opinion the stud broke prior to the accident causing the car to go out of control while experts for the

defendant testified that the ball stud fractured as a result of the accident.

## I.

Plaintiffs except to the refusal of the trial court to strike the evidence of Dyer Carroll, an expert for the defendant. Mr. Carroll testified on the performance of characteristics of tires and the bald condition of the used tires on the Greenland vehicle. He concluded that they failed to conform to minimum tread standards and were unsafe, particularly under the wet road conditions that prevailed on the day of the accident. In answer to a hypothetical question and over the objection of the plaintiffs he gave as his opinion "that the automobile skidded out of control and this was the cause of the accident — that this was the result of skidding and loss of control."

In the course of a lengthy cross-examination of Mr. Carroll, he agreed that he had considered as a possible factor in the accident that there was a good probability that Mrs. Greenland was momentarily distracted by the children in the car. Plaintiffs' counsel moved to strike the testimony of Mr. Carroll on the ground that his opinion was based upon a fact not in evidence, *i.e.,* that Mrs. Greenland was distracted by the children in the car. In support of their exception to the denial of this motion, plaintiffs argue that there was no evidence in the case that this occurred. The witness based his opinion on an inference from the fact that the car was occupied only by the driver and three children aged five months to six years. It does not render an expert's opinion inadmissible for it to be based on inferences from the evidence. *Canney v. Travelers Insurance Co.,* 110 N.H. 304, 266 A.2d 831 (1970); *Fitzpatrick v. Company,* 101 N.H. 35, 131 A.2d 634 (1957); *Massachusetts Mut. Life Ins. Co. v. Brei,* 311 F.2d 463 (2d Cir. 1962); Annot., 56 A.L.R.3d, 300, 335 (1974). It was for the jury to determine whether this was a proper inference and "[a]ny discrepancy in the basis for the opinion would affect the weight rather than the admissibility of the evidence." *Canney v. Travelers Insurance Co.,* 110 N.H. at 307, 266 A.2d at 834 (1970); *Great American Ind. Co. v. Roussell,* 103 N.H. 125, 130, 166 A.2d 866, 869 (1960). It was pointed out in the *Canney* case that "[c]ross examination is the recommended method for an opposing party to accurately establish and test the basis of an expert opinion." 110 N.H. at 307, 266 A.2d at 834 (1970). The plaintiffs' cross-examination of Mr. Carroll effectively probed the basis for his opinion and pointed out any weaknesses in his testimony to the jury.

## II.

At the close of all the evidence the trial court, subject to plaintiffs' exceptions, granted the defendant's motion for a directed verdict on the plaintiffs' counts based on negligence. The trial court thus limited the jury's consideration on liability to strict liability in tort. We agree with the plaintiffs that there was evidence that would entitle the jury to consider the negligence counts but we do not agree that the limitation of issues to strict liability was in error.

It is clear that a products liability action grounded on strict liability may be joined with an action grounded on negligence (Annot., 52 A.L.R.3d 101 (1973)) and the American Law Institute has recognized that strict liability "does not preclude liability based upon the alternative ground of negligence of the seller, where such negligence can be proved." Restatement (Second) of Torts § 402 A, Comment a, at 348 (1965). Whether both issues must be submitted to the jury, however, is dependent upon the facts and circumstances of the case.

*Jiminez v. Sears, Roebuck & Company,* 4 Cal. 3d 379, 482 P.2d 681 (1971), relied upon by the plaintiffs, is an example of when both negligence and strict liability must be submitted. The trial court submitted the case on the sole issue of strict liability and denied a requested instruction on negligence. Following a verdict for the defendant, the trial court granted a motion for a new trial. There was evidence in the case that in addition to the claim based upon strict liability that Sears could be found negligent for not warning that the ladder should not be used on soft ground. Thus the jury could have found the product not defective when sold but found for the plaintiff on the negligence theory.

The present case differs from the *Jiminez* case in that the sole issue in the case centered around the claimed metallurgical fault in the pin in the ball and socket assembly in the right front wheel. The plaintiffs' evidence on negligence focused on a claimed failure of the Ford Motor Company to utilize proper testing procedures which would have detected the structural weakness.

The jury were properly instructed as requested by the plaintiffs that the burden on the plaintiffs in strict liability was to establish that there was a defect in the car when it left the defendant that rendered the car unreasonably dangerous to the user and that the defect was causal to the accident. It should be noted that the plaintiffs in this case did not rely upon a broad claim that defendant's negligent failure to discover the defect by inspecting or testing was ultimately

causal of the accident. Instead their requested instructions on negligence, if given, would have added an additional burden to their case of proving that because of the negligent failure to inspect and test the vehicle, the defendant allowed an "unreasonably dangerous" condition to exist. It could not logically help the plaintiffs' case to thus add the element of negligence in addition to the elements of strict liability. Having found for the defendant on strict liability, a jury could not find for the plaintiffs on the negligence counts except by disregarding their instructions. A finding that the defendant was negligent in failing to discover an "unreasonably dangerous" defect would not support a verdict where the jury found on the count in strict liability either that there was no defect in the car that rendered it unreasonably dangerous to the user or that if there were such a defect when it left the defendant it was not causal to the accident. Submitting both issues to the jury under these circumstances could properly be considered by the trial court as unnecessary and confusing and it was within its discretion in this case to thus limit the issues. *Chestnut v. Ford Motor Company*, 445 F.2d 967 (4th Cir. 1971); *Basko v. Sterling Drug, Inc.*, 416 F.2d 417 (2d Cir. 1969); *see* Keeton, *Products Liability*, 50 F.R.D. 338, 344 (1970).

Plaintiffs argue that the concept of fault is more appealing to a jury and rely on *Rodrigues v. Ripley Industries, Inc.*, 507 F.2d 782 (1st Cir. 1974). In the *Rodrigues* case plaintiff was appealing a verdict he felt was niggardly under the New Hampshire comparative negligence law. The court in rejecting a claim that his case should have been submitted on strict liability as well as negligence commented that the jury "could well have concluded that [the defendant] was less blameworthy in falling short of the more demanding strict liability measure of conduct than in designing the machine carelessly in contravention of the negligence standard." *Id.* at 786. The conjecture of the court in the *Rodrigues* dictum and the plaintiffs' argument may or may not be true. In any event, plaintiffs are not entitled to have their cases presented in the most appealing fashion but only in the correct fashion. In effect, in the present case the argument is that if the jury found the defendant negligent in its inspection, they would be more apt to find a defect present in the car, unreasonably dangerous to the user and causal to the accident. Even if this conjecture is correct, plaintiffs are not entitled to have a jury determine issues on irrelevant and illogical considerations.

## III.

Subject to the exception of the plaintiffs, the trial court refused to admit in evidence a letter from the general counsel's office of defendant company to their trial counsel. The letter commented on the report of plaintiffs' expert. We do not interpret it as an admission against interest, but rather as a denunciation of the report. Since it was not an admission against interest, but a hearsay statement of no probative value, it was properly excluded by the trial court. *Wallace v. Lougee,* 107 N.H. 251, 221 A.2d 780 (1966).

The plaintiffs also claim that the jury were coerced by the trial court to arrive at a verdict. It would appear from the circumstances of the case that if there were any pressure on the jury to return a verdict, it came at the urging of plaintiffs' counsel. The jury of eleven began their deliberation on a Wednesday and reached their verdict on Friday. The foreman of the jury informed the court on Wednesday that they were divided ten to one, a division that persisted. During the period of deliberation, the defendant from time to time urged the court to dismiss the jury and declare a mistrial. Plaintiffs urged the court to give the New Hampshire version of the so-called "dynamite charge" directed at persuading a divided jury to arrive at a verdict. *Ahearn v. Mann,* 60 N.H. 472, 473-74 (1881). This charge was finally given at 11:30 a.m., on Friday. The jury continued deliberation and at 3:10 p.m., that day, the foreman in a note asked whether there was any possibility that the jury could have a transcript of the original charge. Determining that it would take three hours to comply with the request, the court then instructed the jury that the transcript could be made available but first requested the jury to consider "whether or not this would be likely to result in your being able — or the probability that it would enable you to resolve your difficulties, or whether or not it is the sense of the jury that you cannot resolve the issues." The jury again retired and a short time later returned verdicts for the defendant. We find nothing coercive in the final instructions of the trial court. On the contrary, the latter part of the quoted statement was an indication to the jury that they would be discharged if it was then the sense of the jury that they could not resolve the issues. None of the factors were present here that led to a finding of coercion in *United States v. Flannery,* 451 F.2d 880 (1st Cir. 1971), and *United States v. Diamond,* 430 F.2d 688 (5th Cir. 1970), relied upon by the plaintiffs.

## IV.

Another issue in the case concerns the third-party action brought against defendant Ford by East Derry Garage Inc. East Derry Garage sought, by motion, reimbursement for attorney's fees and expenses incurred in the first week of trial. It did not seek reimbursement for fees or expenses prior to the waiver, on the eve of trial, of counts of negligence and warranty against East Derry Garage. The essence of East Derry's contention is that because only the strict liability count remained against East Derry which in the event of a verdict for the plaintiffs would have to be paid by Ford, Ford had the duty to assume East Derry's defense when it was tendered to them.

The right of indemnity which East Derry Garage relies on in its third-party claim against Ford is one implied by law when one is legally required to pay an obligation for which another is primarily liable. *Morrissette v. Sears, Roebuck & Co.*, 114 N.H. 384, 322 A.2d 7 (1974). The *Morrissette* case involved a claim of indemnity for a settlement of a products liability case by a codefendant against the supplier defendant. The rule requiring the indemnitee to show actual liability was there relaxed to require a showing of only potential liability if the indemnitor was afforded an alternative choice of participating in the settlement.

Successful litigants who obtain a defendant's verdict in suits against them are required to bear their own expense of litigation. Restatement (Second) of Torts § 914 (1965). The defendant Ford may be liable as an indemnitor but is not an insurer of the East Derry Garage or its insurance company and cannot be liable to the garage for its expense regardless of the outcome of the original case. *See Hildreth v. Bergeron*, 110 N.H. 197, 263 A.2d 664 (1970). Any liability of Ford to the East Derry Garage is predicated on the liability of Ford for manufacturing a car with a defect which caused the accident. Ford having been found not liable, there is no basis for the East Derry Garage claim against it. *Merck & Company v. Knox Glass, Inc.*, 328 F. Supp. 374 (E.D. Pa. 1971); *Travelers Indemnity Co. v. Firestone Tire & Rubber Co.*, 360 F. Supp. 1328 (S.D. Ala. 1973); *U.S. Fire Ins. Co. v. Chrysler Motors*, 264 Ore. 362, 505 P.2d 1137 (1973).

*Plaintiffs' exceptions overruled; judgment for defendant.*

All concurred.