Delia A. SMITH & James Orth,
etc., Plaintiffs, Appellees,

v.

KMART CORPORATION,
Defendant, Appellant.

Nos. 98–1223, 98–1738.

United States Court of Appeals,
First Circuit.

Heard March 3, 1999.

Decided May 20, 1999.

20

Thomas M. Elcock, with whom Morrison, Mahoney & Miller was on brief, for appellant.

* Of the District of Puerto Rico, sitting by desig-

Eric M. Quetglas–Jordán, with whom José F. Quetglas–Jordán, Quetglas Law Offices, Zygmunt G. Slominski, James M. Orr and Francis & Orr, L.L.P. were on brief, for appellees.

Before TORRUELLA, Chief Judge, SELYA, Circuit Judge, and ACOSTA,* Senior District Judge.

TORRUELLA, Chief Judge.

Before the Court is defendant-appellant Kmart Corporation's ("Kmart") appeal of a jury verdict in favor of husband and wife plaintiffs-appellees Delia Smith and James Orth. Smith and Orth brought a negligence suit when Smith was struck by a falling ice cooler while shopping with Orth in a Kmart store. The jury awarded Smith and Orth damages totaling $800,590, including $500,000 to Smith and $250,000 to Orth for noneconomic damages. After plaintiffs accepted a remittitur of one portion of the award in the amount of $8,611.20, the district court entered final judgment in favor of plaintiffs in the amount of $1,186,428.37, representing: (1) the remitted damage awards of $791,978.80; (2) prejudgment interest in the amount of $123,933.57; (3) costs in the amount of $6,516; and (4) attorneys' fees in the amount of $264,000. Kmart appeals from this judgment, requesting that this Court: (1) vacate the award due to errors allegedly committed at trial, or (2) remit certain components of the damage award due to their excessiveness. We reject Kmart's claims of reversible error, but agree that a portion of the damage award is so excessive as to warrant a remittitur.

## BACKGROUND

Because Kmart asks us to review a jury award of damages for excessiveness, we must examine the evidence in the light most favorable to the award, drawing all possible inferences in its favor. *See Havinga v. Crowley Towing and Transp. Co.,* 24 F.3d 1480, 1483 (1st Cir.1994).

nation.

At approximately 11:00 a.m. on March 4, 1995, Smith and Orth were shopping at the Kmart store in Humacao, Puerto Rico. They were looking at lounge chair cushions which hung from the ceiling, and they asked a Kmart employee to assist them in bringing one of the cushions down. While Smith and Orth waited for that assistance, a 48–quart Coleman ice cooler fell from a shelf behind them. The 8.5–pound cooler fell from a height of approximately 10.5 feet, struck Smith on the back of her head, and rolled down her neck and shoulders. Smith fell to her knees and then backwards to the ground. She lost consciousness for 40–45 seconds and briefly stopped breathing, prompting Orth to administer mouth-to-mouth resuscitation.

When Smith regained consciousness, she felt a sharp pain in her head and heard ringing in her ears. Smith could not feel her left side, causing her to fear that she was permanently paralyzed. When the paramedics arrived, they placed a cervical collar on Smith's neck, placed a board underneath her, and moved her into an ambulance. Smith was taken to the Ryder Memorial Hospital and was diagnosed with a cerebral trauma. A CAT Scan was performed, but the results were normal. She was released a few hours later with a prescription for pain medication and instructions to remain under observation for 24 to 48 hours.

At home, Smith suffered from dizziness, nausea, headaches, numbness and weakness on her left side. She also began to experience anxiety, restlessness, irritability, sleeplessness, difficulty with her speech, and short-term memory loss. Smith returned to Ryder Hospital on March 7, 1995. She was continued on pain medication and was prescribed a muscle relaxant and an anti-inflammatory medication. She was ordered to continue to rest and to see a neurologist. On March 16, 1995, Dr. Héctor Cases Gallardo diagnosed Smith as suffering from a cervical radiculopathy, which is inflammation of the nerve in the cervical root. Dr. Cases ordered a cervical MRI, which revealed ligament inflammation and the swelling and sliding of a posterior disc in her neck. Dr. Cases determined that the resulting compression on the nerve in her cervical spine caused Smith muscle spasms, inflammation and pain in her neck.

Smith continued to experience muscle spasms, pain and movement limitations, so she went to another neurologist, Dr. Angel Chinea, on August 24, 1995. Dr. Chinea diagnosed Smith as suffering from a post-concussion syndrome, cervical whiplash, and a muscular-skeletal injury to her cervical area. Dr. Chinea also made a clinical finding of cervical radiculopathy. In December of 1995, Smith went to the Baylor University Medical Center in Dallas, Texas. She was examined by Dr. Sam Finn and placed on a six-week rehabilitation program. She also began a home therapy program, which she was still engaging in as of the time of trial.

On February 29, 1996, Smith and Orth filed a complaint against Kmart on behalf of themselves and the legal conjugal partnership formed by them. The complaint was premised on diversity jurisdiction, 28 U.S.C. § 1332(a). It alleged that Kmart was negligently responsible for the accident and sought damages in the form of: (1) Smith's physical and emotional pain and suffering; (2) Orth's emotional pain and suffering and loss of consortium; (3) the loss of work that Smith could no longer perform; (4) past and future medical expenses; and (5) attorneys' fees and interest.

Meanwhile, on June 12, 1996, Smith went to see Dr. Fernando Cabrera, a psychiatrist, for the first time. Dr. Cabrera diagnosed Smith with post-traumatic stress disorder ("PTSD"). Dr. Cabrera found that Smith suffered from nightmares, irritability, mood changes, chronic major depression, difficulty sleeping, and impairment in her social and occupational relationships. Dr. Cabrera recommended that Smith continue psychiatric treatments for three to five years.

During the course of discovery, the district court ordered Kmart to produce its loss control manager, Ben Guffy, for deposition on June 13, 1997 in Puerto Rico. Despite the order, Kmart failed to produce Guffy on that day and offered no satisfactory reason for its failure. Plaintiffs moved for sanctions. Although Guffy was later made available for deposition by telephone, the district court issued a September 15, 1997 Order noting Kmart's "reprehensible" conduct during discovery, including its refusal to produce Guffy on the proper day and its refusal to provide other discovery requested by plaintiffs and ordered by the court. The court then stated that it was considering sanctioning Kmart by instructing the jury: (1) that Kmart refused to produce Guffy for deposition; (2) that the jury should infer from that refusal that Guffy's statements would have been harmful to Kmart's case; and (3) that the jury must accept as true that Kmart knew that merchandise in its stores was often stacked in an unsafe manner, frequently causing that merchandise to fall from shelves and severely injure Kmart's customers. Kmart objected to the giving of a sanction instruction, but did not object to the language of the instruction.

Trial commenced the following day. In addition to the medical testimony mentioned above, Dr. Chinea testified at trial that Smith still suffers from many of the symptoms of the whiplash injury, including muscle spasms, nerve damage, severe pain, and decreased functioning of the cervical muscles. Dr. Chinea testified that this condition is permanent, meaning that the symptoms will recur and aggravate whenever Smith engages in physical activity. Dr. Chinea testified that Smith will experience pain intermittently for the rest of her life and at times will be completely disabled for days at a time. Dr. Chinea also testified that Smith will have to continue with her medication and therapy indefinitely.

Smith and Orth testified about the accident and the effect Smith's injury had on their lives. Smith testified that, at the time of her injury, she was forty-three years old and had been married to Orth approximately three years and three months. Smith testified that, due to her injury, she could no longer: (1) travel or continue with her responsibilities in their business; (2) perform normal household chores; or (3) engage in the daily activities of walking, dancing, and taking aerobics classes. She also testified that she experiences constant pain and continually fears additional injury, to the extent that she does not go anywhere, does not allow anyone to stand behind her, does not go into stores like Kmart, and does not drive.

Orth testified that he saw the accident and feared that Smith was dead. He testified to his observations regarding Smith's condition and their multiple visits to various doctors. He testified to the medication Smith has taken and will continue to take and to the therapy that Smith has undergone and will continue to undergo. He testified that he and Smith have had a strained relationship since the accident in that they do not touch, talk, or have a physical relationship any longer. He testified that Smith could no longer meaningfully help with their business and that he now works 18 to 20 hours per day and has no personal life. He testified that he was also forced to do many of the household chores Smith had done previously. He stated that he constantly worries about Smith's condition, but has never seen a psychiatrist or other professional about his mental condition.

Plaintiffs also presented testimony from their friends and neighbors, Arlene and Patrick Fromer. They testified that they met the plaintiffs approximately three years before trial and that Smith became a "different person" after the accident. They testified that Smith no longer engaged in activities such as dancing, walking, and taking aerobics classes. They testified that their once-frequent socializ-

ing "pretty much stopped." They also testified that when the two couples did spend time together, Smith was in constant pain and discomfort.

During his closing argument, plaintiffs' counsel reviewed the evidence presented at trial and argued that Kmart was negligent and that this negligence caused Smith's injuries and the damages suffered by Smith and Orth. Plaintiffs' counsel stressed that Kmart had a duty to keep its premises safe for its customers, but simply "did not care" enough to do so. Plaintiffs' counsel argued that Kmart did not "care" about Smith, her condition, or the safety conditions of its stores. The only objection raised by defense counsel complained of plaintiffs' counsel's mention of "post-concussion syndrome," rather than post-traumatic stress disorder. Rather than objecting to what Kmart describes now as "improper argument," defense counsel responded with an inflammatory argument of his own, focusing mainly on the plaintiffs' credibility in arguing that Kmart was not negligent and that plaintiffs were motivated by money and were deceptively inflating their damages. In rebuttal, plaintiffs' counsel again argued that Kmart and its doctors did not "care" about Smith. Counsel also argued that plaintiffs were not seeking to profit and were not asking for punishment. Counsel argued that plaintiffs sought only the full amount of their damages in order to send a message to Kmart. Counsel also reminded the jury that Ben Guffy committed an act of defiance of the court and asked the jury to send him a message that "in Puerto Rico we won't take this." Defense counsel did not object to any portion of plaintiffs' counsel's rebuttal argument.

The district court then instructed the jury on the applicable law. The only instruction to which appellant objects on appeal is the instruction given as a sanction due to Kmart's failure to produce Guffy for deposition as ordered. The district court gave the instruction it previewed to the parties in its September 15, 1997 Order.

While Kmart objected before the instruction was given to the giving of any sanction instruction, it did not object—either before or after the sanction instruction was given—to the specific language of the instruction.

The jury retired to deliberate and returned with a verdict in favor of plaintiffs. The jury found Kmart to have been negligent and awarded: (1) $25,000 to the conjugal partnership for past medical expenses; (2) $25,590 to the conjugal partnership for projected medical expenses in the future; (3) $500,000 to Smith for damages excluding medical expenses; and (4) $250,000 to Orth for damages excluding medical expenses.

After the jury rendered its verdict, Kmart moved for a new trial or a remittitur of all of the awards. The district court found all components of the award to be amply supported by the evidence, except the award for past medical expenses. Thus, the court conditionally granted the motion for a new trial. The court stated that it would not order a new trial if plaintiffs accepted a remittitur of $8,611.20 of the award for past medical expenses. Plaintiffs agreed to the remittitur, and the $25,000 award for past medical expenses was reduced to $16,388.80, while all other components of the damage award remained unchanged. The court then entered judgment awarding: (1) the remitted amount; (2) prejudgment interest on the remitted amount; (3) costs and attorneys' fees; and (4) post-judgment interest on the total. Kmart immediately appealed.

## DISCUSSION

### I. Improper Closing Argument of Plaintiffs' Counsel

Kmart first argues that plaintiffs' counsel's closing argument interjected purely emotional, inflammatory, and prejudicial elements into the jury deliberations. Kmart argues that this closing argument constituted plain error, warranting a new trial despite its failure to object to the

arguments at trial and its failure to request a new trial on this basis.

Kmart argues that plaintiffs' counsel made three types of purely emotional, inflammatory, and prejudicial statements during his closing argument. First, Kmart objects to counsel's repeated arguments that Kmart did not "care" about Smith, her alleged condition, or the safety conditions in Kmart stores. Second, Kmart complains that counsel improperly asked the jury to punish Kmart for the failure to produce Guffy for deposition. Third, Kmart argues that plaintiffs' counsel encouraged the jury to award punitive damages against defendants by requesting that the jury consider the damages associated with other potential customers.

## A. Standard of Review

■ Kmart admits that it failed to object to any of these allegedly improper arguments and concludes from this that the standard of review is plain error. *See Fernandez v. Corporacion Insular De Seguros,* 79 F.3d 207, 210 (1st Cir.1996); *Johnson v. National Sea Products, Ltd.,* 35 F.3d 626, 631 (1st Cir.1994). Appellees counter that Kmart's failure to raise the improper argument issue at any point prior to its brief on appeal results in a total waiver of the issue, rather than plain error review. Appellees cite two cases for the general proposition that "[i]f any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." *Teamsters, Local No. 59 v. Superline Transp. Co.,* 953 F.2d 17, 21 (1st Cir.1992): *see also Noonan v. Winston Co.,* 135 F.3d 85, 89–90 (1st Cir. 1998). Appellees also cite cases in which this court has stated that "[w]e will not consider arguments which could have been, but were not, advanced below," *Sullivan v. National Football League,* 34 F.3d 1091, 1097 n. 1 (1st Cir.1994), *cert. denied,* 513 U.S. 1190, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995), and that "it is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals," *United States v. Slade,* 980 F.2d 27, 30 (1st Cir. 1992).

The appellees' citations overlook the basic difference between waiver and forfeiture. *See United States v. Olano,* 507 U.S. 725, 732–33, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Mitchell,* 85 F.3d 800, 807–08 (1st Cir.1996). The overwhelming weight of the authority supports the rule that, when no timely objection is made, claims of improper closing argument are forfeited, not waived, and thus amenable to review for plain error. *See Fernandez,* 79 F.3d at 210; *Johnson,* 35 F.3d at 631; *Anthony v. G.M.D. Airline Services, Inc.,* 17 F.3d 490, 496 n. 7 (1st Cir.1994); *DeVasto v. Faherty,* 658 F.2d 859, 864 (1st Cir.1981). Even courts which purport to foreclose review of such claims due to the absence of an objection make exceptions tantamount to plain error review. *See, e.g., Doty v. Sewall,* 908 F.2d 1053, 1056 (1st Cir.1990) (stating that issues regarding twelve items of impermissible argument or evidence were not properly preserved for appeal due to the failure to object, but still allowing review upon a showing of "substantial injustice"); *Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 609 (1st Cir.1985) (stating that review of a claim of improper closing argument was "foreclosed" due to the failure to object, but still determining whether review was required to prevent a miscarriage of justice despite the lack of an objection).[1]

---

1. We do note the existence of *American Universal Ins. Co. v. Falzone,* 644 F.2d 65 (1st Cir.1981). In that *per curiam* opinion, this court found that review of a claim of improper argument was "precluded" by the lack of objection or motion for a mistrial; the court conducted no plain error review. *See id.* at 67. While *Falzone* has not been expressly overruled, the mode of analysis employed in this very brief consideration of the issue has clearly been abandoned in this circuit in favor of plain error review. *See supra,* p. 24.

Thus, we review Kmart's claims for plain error.

■ Under plain error review, we will consider a forfeited objection only if: (1) an error was committed; (2) the error was "plain" (i.e. obvious and clear under current law); (3) the error was prejudicial (i.e. affected substantial rights); and (4) review is needed to prevent a miscarriage of justice. *See Chute v. Sears Roebuck and Co.*, 143 F.3d 629, 631 (1st Cir.1998); *United States v. Bartelho*, 129 F.3d 663, 673 (1st Cir.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 241, 142 L.Ed.2d 198 (1998). To merit reversal, the error must have "resulted in a miscarriage of justice or seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 189 (1st Cir.) (citation and internal quotation marks omitted), *cert. denied,* 519 U.S. 927, 117 S.Ct. 294, 136 L.Ed.2d 214 (1996). Plain error is a "rare species in civil litigation," encompassing only those errors that reach the "pinnacle of fault" envisioned by the standard set forth above. *See Cambridge Plating Co., Inc. v. Napco, Inc.*, 85 F.3d 752, 767 (1st Cir.1996) (citations omitted).

### B. The Alleged Instances of Improper Argument

■ Kmart's first claim of improper argument centers on plaintiffs' counsel's nine references that Kmart did not "care" about Smith or safety conditions at its stores. As noted by appellant, "[i]ntroduction of purely emotional elements into the jury's deliberations is clearly prohibited conduct." *Doty*, 908 F.2d at 1059 (citing *Polansky v. CNA Ins. Co.*, 852 F.2d 626, 630 (1st Cir.1988)). Appellees argue that counsel's references were not such emotional appeals, but rather were proper arguments addressed to the negligence issues of whether Kmart knew or could foresee that injuries would occur, but still failed to prevent them.

Viewed in context, some of plaintiffs' counsel's references do appear to have been properly directed towards the knowledge, foreseeability, and breach of duty questions. Others, however, do not. For example, counsel argued at one point that Kmart and its doctors "don't care at all" about Smith personally, which is quite different than arguing that Kmart did not care about or take steps to prevent the possibility of injury. There were other instances in which plaintiffs' counsel argued that Kmart "does not care," in the present tense, which has little bearing on the question of Kmart's negligence at the time of the accident. Counsel also argued that Kmart did not even care enough to make Guffy available to give a deposition in the case. Finally, counsel argued that Kmart did not care because it was not paying the true amount of damages that it caused. The import of these remarks was to stain the corporate character of Kmart in front of the jury. This is improper argument.

■ Kmart's second claim is that plaintiffs' counsel improperly asked the jury to punish Kmart for failing to produce Guffy for deposition by awarding a greater amount of damages. Appellees argue that their counsel made no such argument. During rebuttal, plaintiffs' counsel argued:

> Now, what we do want here is that this same thing not continue to happen. And I am not asking for punishment, I'm asking to send a message to this guy, [Ben Guffy], who even committed an act of defiance to this Court. That's why an order is here. And you send a message to this guy, that in Puerto Rico we won't take this. And if they allow it, they were to pay the full price.

Appellees claim that when counsel argued "we don't take this," he meant that the public would not tolerate the unsafe conditions in the Humacao Kmart store. We agree with appellees that it is reasonable to interpret this passage as asking the jury to send a message about the unsafe conditions that caused the accident, while

simultaneously reminding the jury that Guffy failed to appear for deposition and that an instruction existed to punish Kmart for that failure.

Still, counsel's reminder was improper to the extent that it was a request for a punitive form of damages, and it was also improper because it attempted to sanction Kmart a second time for its failure to produce Guffy for deposition. Because the district court had already determined that it would punish Kmart for that failure in the form of an instruction to accept certain facts as true, this solicitation of a second sanction was improper. *Cf. Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 930 F.2d 1021, 1027 (2d Cir.1991) (finding error when a district court first sanctioned a party for late production of documents by precluding the introduction of evidence and then effectively allowed the jury to sanction the party a second time by instructing the jury that it could consider the late production).

■ Kmart's final claim of improper argument asserts that plaintiffs' counsel encouraged the jury to award punitive damages against Kmart in excess of any compensable damages for injuries actually suffered by appellees. Kmart claims that counsel asked the jury to consider the injuries allegedly suffered by other individuals. We cannot agree with this contention. Even the excerpt cited by Kmart specifically states that plaintiffs' counsel was asking for "the full price, not more than that." Counsel did attempt to portray the magnitude of the alleged safety problem by estimating the number of accidents in Kmart stores nationally. Counsel also spoke in general terms in stating that "every customer is entitled to be safe" and that "if you have an injury, you have a right to be treated fairly." However, Kmart points to no instance— and we can find none—in which counsel argued that the jury should award appellees additional damages for this general problem or for any injuries allegedly suffered by others.

In sum, while some of the arguments complained of by Kmart were proper, others were clearly not.

## C. Prejudice to Substantial Rights

■ Kmart faces an uphill battle in attempting to show prejudice because, on this record, we are confident in stating that a verdict in favor of the plaintiffs was inevitable. Whether the improper arguments identified above were responsible for elevating the award to an excessive one is highly debatable. Kmart now argues that the excessive award was caused by the improper argument of plaintiffs' counsel, but it made no such claim in its post-trial motion for judgment as a matter of law, a new trial, or remittitur. Nor did Kmart raise the improper argument issue in its statement of issues filed under former Fed. R.App. P. Rule 30(b). These omissions cast doubt on whether Kmart itself believed that the alleged excessiveness of the award was caused by plaintiffs' counsel's closing argument.

Several other factors could have caused or contributed to the substantiality of the award. We have already found many of appellees' counsel's arguments to be proper, and the jury may well have been influenced to grant such a substantial award by those proper arguments. The jury may have been swayed by the extensive expert medical testimony in this case or by the emotional testimony of Smith or Orth. Or the jury may have been inflamed by Kmart's trial tactics (including the choice to dangle the offending cooler over Smith's head) or by Kmart's own improper argument. Additionally, the district court took precautions in its instructions to minimize the chance of a verdict based on passion or prejudice. The jury was instructed that: (1) its duty was to follow the law; (2) the attorneys' statements were not evidence; (3) it should apply the law without being governed by sympathy or prejudice; and (4) plaintiffs were only entitled to receive compensatory damages for injuries they

had suffered and proven. As a result, we are not persuaded that plaintiffs' counsel's improper argument caused whatever excessiveness may exist in the award.

### D. Miscarriage of Justice

Even if Kmart could demonstrate some degree of prejudice resulting from plaintiffs' counsel's argument, we still would not count this case among the "rare species" of civil cases that must be reversed due to plain error. Kmart must demonstrate that the error "resulted in a miscarriage of justice or seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Coastal Fuels,* 79 F.3d at 189. We do not find such a miscarriage in this case, where Kmart's own closing argument was nearly as improper as that of which it complains. Kmart repeatedly introduced emotional elements of its own into the jury's deliberations in response to plaintiffs' counsel's attempts to paint Kmart as an uncaring villain. Kmart sought to demonize the plaintiffs when, under the guise of credibility arguments, defense counsel argued: (1) that Smith forgot she was supposed to be in pain until her lawyer reminded her; (2) that Orth was planning litigation rather than attending to his supposedly injured wife; and (3) that Orth claimed to have seen another person express shock at "what [they]'ve done" to hide the fact that he caused the accident himself. Both sides made emotional arguments in this case, sometimes proper, sometimes not. But it is hardly a miscarriage of justice when a party fails to object to improper argument by its opponent and chooses to retaliate with improper argument of its own, only to have this strategic decision backfire when the jury returns a substantial award against it.

For all of these reasons, we find no reversible error either in plaintiffs' counsel's summation or in the district court's failure *sua sponte* to grant a new trial due to that summation.

### II. Improper Sanction Instruction

▆▆▆▆ Kmart's second argument is that the district court abused its discretion in giving the sanction instruction that it gave to punish Kmart for failing to produce Guffy for deposition. Kmart recognizes that the choice of sanctions for failing to comply with a discovery order lies within the sound discretion of the court. *See Marx v. Kelly, Hart & Hallman, P.C.,* 929 F.2d 8, 10 (1st Cir.1991). Kmart also concedes that it is proper for a trial judge to sanction a party for its failure to appear for deposition pursuant to Fed.R.Civ.P. 37(b)(2)(A) & (B) and Fed.R.Civ.P. 37(d) by instructing the jury to assume that the party's testimony would have been unfavorable. What Kmart objects to here is the language of the sanction instruction given.

Kmart acknowledges that it would not have been an abuse of the district court's discretion to have instructed the jury to accept as true that Kmart was on notice that merchandise in the Humacao store was stacked in a dangerous manner. Kmart argues that the district court crossed the line when it instead instructed:

> From K–Mart's refusal to produce its loss control manager, the Court instructs you that the loss control manager's statements would have been harmful to K–Mart's case. Therefore, you are instructed to accept as true that K–Mart knew that merchandise in its store was often stacked in an unsafe manner, frequently causing that merchandise to fall from shelves and injuring K–Mart customers.

Kmart argues that this instruction improperly communicated to the jury that Kmart knew of a serious, nationwide safety problem that frequently caused injuries to Kmart customers. Kmart argues that this message caused the jury to award damages designed to punish Kmart for this nationwide problem.

Again, Kmart complains after failing to

raise an objection before the trial court,[2] as is required by Rule 51 of the Federal Rules of Civil Procedure.[3] Therefore, we review the challenged jury instruction for plain error. *See Chute*, 143 F.3d at 631; *Transamerica Premier Ins. Co. v. Ober*, 107 F.3d 925, 933 (1st Cir.1997); *Poulin v. Greer*, 18 F.3d 979, 982 (1st Cir.1994).

■■■ While the language of the instruction was not perfect, there was no plain error. We do not read the instruction, as Kmart does, to establish that Kmart had a nationwide safety problem. The sanction instruction referred only to "the store" and did not attempt to establish any facts regarding other Kmart stores. With regard to the statements that merchandise in the store was "often" stacked in an unsafe manner and that merchandise "frequently" fell and injured customers, we do not find this language, in the absence of a focused objection, to fall outside the scope of the district court's discretion. Rule 37(b)(2)(A) authorizes the district court to enter an order stating that the matters that were the subject of the discovery order that was violated shall be taken to be established. Fed.R.Civ.P. 37(b)(2)(A). Guffy was Kmart's loss control manager, and the purpose of taking his deposition was to determine facts regarding: (1) merchandise display and storage, and (2) the extent of similar accidents and injuries occurring in Kmart stores. When Kmart violated the court's order by failing to produce Guffy for deposition, it was proper for the district court to sanction Kmart by instructing the jury to accept the unfavorable proposition that plaintiffs hoped to prove during Guffy's testimony: that unsafe merchandise display practices had caused similar accidents and injuries in the relevant Kmart store. Therefore, the giving of this particular sanction instruction does not warrant a new trial.[4]

## III. Grossly Excessive Damage Awards

Kmart's final argument requests a remittitur of the damages awarded to Smith and Orth because the amounts of those awards are so grossly excessive as to constitute a miscarriage of justice. Kmart does not challenge the awards to the conjugal partnership for past and future medical expenses in the combined amount of $41,978.80. Rather, Kmart challenges only the awards to Smith and Orth for damages excluding medical expenses in the amounts of $500,000 and $250,000, respectively.

■■■ Kmart has apparently dropped its request for a new trial on this ground and argues only that this Court should order a remittitur of both awards. We review the denial of a motion for a remittitur for abuse of discretion. *See Anthony*, 17 F.3d at 493; *McDonald v. Federal Laboratories, Inc.*, 724 F.2d 243, 246 (1st Cir. 1984). We will find an abuse of discretion only if the jury's verdict exceeds "any rational appraisal or estimate of the damages that could be based on the evidence before the jury." *Milone v. Moceri Family, Inc.*, 847 F.2d 35, 36 (1st Cir.1988) (quoting *Segal v. Gilbert Color Systems, Inc.*, 746

---

2. Prior to the jury charge, Kmart objected to the giving of any sanction instruction at all, a position which it does not now take. Kmart made no objection before the trial court that mirrors its present complaint regarding the form and language of the sanction instruction given.

3. Rule 51 provides that "[n]o party may assign as error the giving or failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict." Fed.R.Civ.P. 51.

4. Kmart also complains that the instruction had the effect of allowing the jury to sanction Kmart for its discovery failure in violation of the principle that it is the role of the court, not the jury, to sanction a party for discovery abuses. *See Werbungs*, 930 F.2d at 1027. This argument is meritless. The district court did not instruct the jury to punish Kmart for its abuses, and Kmart agrees that it is a permissible sanction to instruct a jury to accept certain facts as true. If the jury does in fact accept those facts and finds liability based on those facts, the resulting damage award is in no sense a sanction by the jury for discovery abuses.

F.2d 78, 81 (1st Cir.1984)). We have noted that "the obstacles which stand in the path of" such claims of excessiveness "are formidable ones." *Wagenmann v. Adams,* 829 F.2d 196, 215 (1st Cir.1987). Translating legal damage into money damages is a matter "peculiarly within a jury's ken," especially in cases involving intangible, non-economic losses. *Id.; see also Correa v. Hospital San Francisco,* 69 F.3d 1184, 1197 (1st Cir.1995) ("An appellate court's normal disinclination to second-guess a jury's evaluation of the proper amount of damages is magnified where, as here, the damages entail a monetary valuation of intangible losses, and the trial judge, having seen and heard the witnesses at first hand, accepts the jury's appraisal."), *cert. denied,* 517 U.S. 1136, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996). Viewing the evidence in the light most favorable to the verdict, the jury's assessment of damages will not be disturbed unless it is "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." *Id.* (quoting *Segal,* 746 F.2d at 80–81) (internal quotation marks omitted).

The district court instructed the jury that plaintiffs' damages excluding medical expenses were for "physical and emotional pain and suffering already suffered or to be suffered in the future." The court defined "pain and suffering" damages to include any damages for loss of enjoyment of life that he or she is reasonably certain to suffer in the future, taking into account each plaintiff's past interests and way of life. The court then defined "damages for enjoyment of life" to include damages for "loss of consortium, including reduction in sexual relations, affection, comfort, companionship, conjugal life, fellowship, society and/or the assistance that accompanies the marriage relationship." The court then instructed the jury that it could award only those types of damages. As a result, the two awards at issue can only be said to reflect damages for: (1) past and future physical pain and suffering; (2) past and future emotional pain and suffering;

and (3) loss of enjoyment of life, including loss of consortium.

### A. Smith's Award of $500,000

In light of the deference owed the jury award under this standard, we do not find that the $500,000 award to Smith is so excessive as to warrant a remittitur. The evidence of Smith's physical and emotional pain and suffering is abundant. There was evidence that Smith has been in near-constant pain since the blow to her head, neck and shoulders at approximately 11:00 a.m. on March 4, 1995. Smith stopped breathing and was unconscious for approximately forty seconds. She lost feeling on the left side of her body, causing her to fear paralysis. She was then rushed to the hospital in a cervical collar and given pain medication for a head trauma. Smith then experienced additional pain, numbness, difficulty speaking, and muscle limitations, causing her to visit several other doctors. Smith has been under various medications for pain and inflammation since her first visit to the hospital. Smith has experienced severe depression, anxiety, irritability, restlessness, sleeplessness, and short-term memory loss. Dr. Chinea testified that Smith will suffer from intermittent pain, muscle spasms, and decreased functioning of her cervical muscles for the rest of her life. Dr. Chinea also testified that these symptoms recur and aggravate whenever Smith engages in the simplest of physical activity, and will continue to do so. Smith has been diagnosed with PTSD, exhibiting the symptoms of nightmares, mood changes, major depression, sleeplessness, and impairment of relationships. While Kmart took steps to minimize this physical and emotional pain and suffering before the jury, we must now view the evidence in the light most favorable to the verdict. Viewed in that light, we note that the record teems with evidence of Smith's past and future pain and suffering.

There was also substantial evidence presented regarding Smith's loss of enjoyment of life. Testimony by Smith and her doctors established that Smith was simply unable to engage in many of the physical activities she had enjoyed in the past, including dancing, walking, and taking aerobics classes. Smith testified that she is unable to drive a car or venture out beyond her house due to her fear of additional injury. Smith and Orth testified to the great strain that has been placed on their relationship and to the marked decrease in the amount of socializing with friends. If the jury believed this testimony—which it is entitled to do without judicial second-guessing of its credibility determinations—the jury was faced with a plaintiff who is virtually unable to leave her home, unable to perform any physical activity, and unable to maintain normal social relationships. Such limitations amount to a substantial loss of the opportunity to enjoy life as Smith had prior to the accident.

While we agree with Kmart that this award was certainly generous, we do not find it to be "grossly excessive" or "shocking to the conscience," in light of the extensive evidence of the pain and suffering endured and yet to be endured by Smith and the limitations that her condition has placed on her ability to enjoy life. We have upheld awards for pain and suffering and lost enjoyment damages in the range of the damages awarded to Smith. *See, e.g., Correa,* 69 F.3d at 1198 (upholding: (1) a $200,000 award for the pain and suffering experienced by Carmen González Figueroa for the few hours prior to her death, following the negligence of the hospital she appeared at complaining of dizziness and chest pains, and (2) a combined $500,000 award for the pain and suffering of González' heirs); *Hogan v. Bangor and Aroostook Railroad Co.,* 61 F.3d 1034, 1037–38 (1st Cir.1995) (upholding $200,000 award for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life in the absence of any physical injury, when defendant refused to allow plaintiff to return to work, causing plaintiff to be depressed and to give up his usual activities); *Havinga v. Crowley Towing and Transp. Co.,* 24 F.3d 1480, 1483 (1st Cir.1994) (upholding several awards for pain and suffering and loss of enjoyment of life ranging from $200,000 to $450,000 when evidence was presented that the plaintiffs suffered severe emotional and psychological injuries which significantly affected the quality of their lives and caused each to avoid activities in which he had previously engaged); *Ruiz v. Gonzalez,* 929 F.2d 31, 34–35 (1st Cir.1991) (upholding a past and future damages award of $350,000 when there was evidence that plaintiff was diagnosed with post-traumatic stress disorder and suffered a permanent partial disability, although a portion of the award could have represented lost future earnings).

In *Anthony,* we found a $566,765 award for pain and suffering to be so grossly disproportionate to the plaintiff's injury as to be unconscionable. *See Anthony,* 17 F.3d at 494. However, in that case, we based our finding of excessiveness on several factors. First, there was no evidence that the plaintiff's leg injury prevented him from engaging in any particular activities. *See id.* Second, there was no evidence that the injury otherwise interfered with the plaintiff's professional, recreational, or personal life. *See id.* Third, the physical injury was not particularly severe or painful and required no major medical treatment. *See id.* Finally, there was no evidence that the plaintiff's injury was permanent. *See id.* While each aggravating factor was absent in *Anthony,* each aggravating factor is present in Smith's case. Thus, our holding in *Anthony* is of little assistance.

Kmart offers a series of damage awards in various state courts ranging from $3,000 to $132,215 for what Kmart terms "soft tissue injuries" comparable to Smith's injuries. From this, Kmart argues that the award to Smith should be reduced to more closely match those awards.

However, even if we could accept Kmart's belittling characterization of Smith's injuries, the existence of smaller damage awards in other jurisdictions, based upon different factual scenarios, does not render the present award "grossly excessive." We do not disagree that the present award is generous in comparison to the awards given by Kmart as examples, but we have stated in the past that "merely showing that the damage award is generous in comparison to other (hand-picked) cases is insufficient to warrant relief." *See Correa*, 69 F.3d at 1198 (citing *Havinga*, 24 F.3d at 1488–89). Thus, Kmart's tour of personal injury cases in courts from California to Maine does not dissuade us from finding that the evidence before the jury was sufficient to support the $500,000 award to Smith for past and future pain and suffering, emotional distress, and lost enjoyment of life.

### B. Orth's Award of $250,000

 Unfortunately for plaintiffs, the same cannot be said of the $250,000 award to Orth. As a bystander to Smith's injury, Orth has no physical injuries of his own. While this does not preclude Orth from recovering for his emotional pain and suffering and for his lost enjoyment of life, it does preclude him from recovering for a category of injury—past and future physical pain and suffering—that makes up a substantial portion of Smith's award.

Additionally, the evidence of Orth's emotional pain and suffering was considerably less than the evidence of Smith's emotional pain and suffering. Since Orth has not seen a psychologist, psychiatrist or therapist for his emotional distress, there was no expert testimony on this issue whatsoever. Orth testified to his horror in watching as Smith was struck by the cooler and lost consciousness. Orth testified that he performed CPR on Smith and thought, at various times, that she was either dead or paralyzed. Orth testified to all of the medical visits on which he accompanied Smith and testified to his constant

worry over her condition. He testified that he was "emotionally tired, mentally tired, [with] periods of fear." In addition to Orth's testimony, Arlene Fromer (and Patrick Fromer, through a stipulation) testified that the accident "really impacted James" and that Orth was constantly worried about Smith's condition. This evidence amply demonstrates that Orth witnessed a distressing event and is now often a tired and worried individual, but hardly approaches the emotional pain and suffering required to sustain such a substantial award.

Regarding Orth's loss of enjoyment of life, including loss of consortium, the evidence is nearly as limited. Orth testified that Smith performed two to three hours of housekeeping work per day before the accident, but could only manage 45 minutes to an hour of such work after the accident. Orth testified that he was forced to do all of the cooking each night, but that they hired someone to help with the other housework. Orth testified that he no longer has a personal life because he works 18–20 hours per day to compensate for the amount of work that Smith can no longer perform. Orth testified that he and Smith have a strained relationship in that "we don't touch, we don't talk, we don't have a physical relationship anymore." Orth testified that, before the accident, they had considered starting a family. The Fromers testified that Orth had to take over many of the household responsibilities that Smith was once able to do. The Fromers also testified that Smith and Orth stopped socializing with them after the accident. This evidence of Orth's loss of enjoyment of life and loss of consortium simply does not rise to a level commensurate with the amount of damages awarded.

In short, we find the jury's $250,000 award to Orth for past and future emotional pain and suffering, loss of enjoyment of life, and loss of consortium to be "grossly excessive, inordinate, shocking to the conscience of the court, [and] so high that it would be a denial of justice to permit it to

stand." *Correa,* 69 F.3d at 1197 (quoting *Segal,* 746 F.2d at 80–81) (internal quotation marks omitted). Because the jury's verdict in this regard exceeds "any rational appraisal or estimate of the damages that could be based on the evidence before the jury," *Milone,* 847 F.2d at 36, we find that the district court abused its discretion in denying Kmart's motion for a remittitur of Orth's award. Accordingly, we remand this case with instructions to vacate the $250,000 award to Orth for his damages excluding medical expenses and order a new trial on this issue, unless Orth agrees to remit all of that award in excess of $100,000. After carefully reviewing the evidence of Orth's damages that was presented at trial and examining the various types of injuries and damage awards of the cases cited *supra* at pp. 29–30 and 31, we conclude that $100,000 represents the upper limit of a rational appraisal of Orth's damages.[5]

## CONCLUSION

Based on the foregoing, the portion of the judgment awarding Smith $500,000 in damages excluding medical expenses is **AFFIRMED**. This case is **REMANDED** to the district court with instructions to set a deadline by which plaintiffs must accept or reject a remittitur of the $250,000 award for Orth's damages excluding medical expenses to $100,000. If plaintiffs elect to accept this remittitur, the district court shall modify the judgment accordingly. If plaintiffs elect not to accept this remittitur, the district court shall vacate the judgment and order a new trial on the issue of Orth's damages excluding medical expenses.

---

**5.** While our calculation of this amount is admittedly imprecise, converting feelings such as pain and suffering and the loss of enjoyment of life into dollars is not an exact science. *See Correa,* 69 F.3d at 1198.