# United States Court of Appeals

## For the First Circuit

No. 01-2010

NATHANIEL TRULL, PPA DAVID TRULL AND DAVID TRULL,
ADMINISTRATOR OF THE ESTATE OF BENJAMIN TRULL,

Plaintiffs, Appellees,

v.

VOLKSWAGEN OF AMERICA, INC. and
VOLKSWAGEN, AG,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Lipez, Circuit Judge,
Campbell and Bownes, Senior Circuit Judges.

Howard B. Myers with whom Carolyn Cole Durst, Myers
Associates, PLLC, Michael Hoenig, Roger Arentzen, Miriam Skolnik,
and Herzfeld & Rubin, P.C. were on brief for appellants.

Alan L. Cantor with whom Edward M. Swartz, David P. Angueira,
and Swartz & Swartz were on brief for appellees.

November 14, 2002

**BOWNES**, <u>Senior Circuit Judge</u>.  This appeal arises out of an action brought in the district court arising from a collision on February 19, 1991, in Conway, New Hampshire, between a 1986 Volkswagen Vanagon and a 1979 AMC Concorde.  The Vanagon was driven by David Trull.  His two sons Benjamin and Nathaniel were seated in the rear passenger seat.  Benjamin was killed; his brother, Nathaniel, received serious injuries.  The father, David Trull, brought this action on behalf of Benjamin's estate and Nathaniel, who was a minor at the time the complaint was brought.

The plaintiffs asserted claims in strict liability and negligence against both defendants-appellants Volkswagen of America, Inc. and Volkswagen, AG (collectively "VW").  The evidence was essentially the same as to both theories of liability.  The district court instructed the jury:  "The plaintiffs have asserted strict product liability and negligence claims against the defendant.  However, they need not prove both claims to recover. They will be entitled to recover if they prove one or the other of these claims."

Plaintiffs' claim of liability was that the 1986 Vanagon had been defectively designed and was unreasonably dangerous because it was not equipped with lap/shoulder belts in each of the rear seats.  The only passenger body restraints were lap belts. The jury, in answer to specific questions, found that VW was not liable in strict liability but was liable in negligence.  It

awarded Nathaniel Trull the sum of $8,917,335.27. It awarded the estate of Benjamin Trull $1,290,980.70.

This is the second time that this case has been before us. In the first trial VW prevailed. The plaintiffs appealed on the ground that the trial judge erred in putting the burden of proof as to enhancement of injuries on them. We certified that issue to the New Hampshire Supreme Court. Trull v. Volkswagen of Am., 187 F.3d 88 (1st Cir. 1999). The Supreme Court of New Hampshire ruled that in a damages enhancement situation the burden of proof falls on the defendant. Trull v. Volkswagen of Am., Inc., 761 A.2d 477 (N.H. 2000). We remanded to the district court for a new trial. Trull v. Volkswagen of Am., Inc., 229 F.3d 343 (1st Cir. 2000). We affirm the judgment below.

## I. THE VERDICTS

There are four issues posited for review. Our discussion of the issues does not follow the order in which they are argued in VW's brief. We start with VW's contention that the verdicts were inconsistent, that the negligence finding of liability was nullified by the jury finding that VW was not liable on the claim of strict liability and therefore there should be either a judgment for VW or a new trial.

The case was tried from the start by plaintiffs on the theory that the 1986 Vanagon was defectively designed because it lacked lap/shoulder belts on the rear seats and this omission

caused the death of Benjamin Trull and seriously injured Nathaniel Trull. In its jury instructions the district court explained separately the elements of strict liability and negligence. No objection was made by VW to the verdict forms handed to the jury or the risk of inconsistent verdicts until after the clerk had been instructed by the court "to enter judgment in accordance with the special findings of the jury" and the jury discharged.

VW implies in its brief at page 15 that it did not have the time to make any objections or that the district court speeded up the post-verdict process to thwart any objections. There is nothing in the record to substantiate this implication. Labeling the post-verdict session a "truncated ten-minute session" does not change the facts. VW's attorneys may have been shocked by the verdict but there is nothing in the record to indicate that VW wished to object to anything.

The record shows that VW did not object to the verdict forms at any time prior to their submission to the jury. The record further establishes that there were no objections to the jury instructions at any time either prior to or after their delivery. This means that VW has waived its right to object to any foreseeable combination of proper responses to the questions posed on the verdict forms. It also means that VW was satisfied with the jury instructions until the jury returned the verdicts.

If we assume arguendo the verdicts were inconsistent, and as to this we have serious doubts, there can be no doubt that VW's failure to follow the applicable Rule of Civil Procedure bars its appeal. It is clear to us that Federal Rule of Civil Procedure 49(b) applies to the verdict forms, not Rule 49(a) as VW asserts. Rule 49(a) states: "The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact." Here, for example, a special verdict form could have included questions such as whether the brothers were wearing lap belts at the time of the collision. When such a form is used, the jury makes only findings of fact; it is up to the court to apply the law. Babcock v. Gen. Motors Corp., 299 F.3d 60, 63 (1st Cir. 2002); see 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2503 (2d ed. 1994). There can be little doubt that this was not the type of verdict form used in this case.

The verdict form in this case fell within the ambit of Rule 49(b) which addresses general verdicts and states: "The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict."

Although there were no written interrogatories submitted to the jury, it is clear that the two liability questions submitted to the jury were general verdict forms under Rule 49(b).

Strict Liability

      1.  Do you find by a preponderance of the evidence that the 1986 Vanagon was defectively designed because it lacked lap/shoulder belts in the rear seating positions?

<u>     **NO**     </u>
(Yes or No)

Negligence

      3.  Do you find by a preponderance of the evidence that the defendant was negligent in designing and/or testing the 1986 Vanagon because it lacked lap/shoulder belts in the rear seating positions?

<u>     **YES**     </u>
(Yes or No)

The last sentence of Rule 49(b) specifically discusses inconsistent answers to questions submitted to the jury: "When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial."

We have held that under Rule 49(b), objections to the inconsistency of verdicts must be made after the verdict is read and before the jury is discharged. <u>E.g.</u>, <u>Babcock</u>, 299 F.3d at 63; <u>Merchant</u> v. <u>Ruhle</u>, 740 F.2d 86, 89 (1st Cir. 1984); <u>Skillin</u> v. <u>Kimball</u>, 643 F.2d 19, 19-20 (1st Cir. 1981). We rule that VW forfeited its objection to the alleged inconsistency by failing to object at any time prior to the jury's discharge.

The instructions made it clear that the jury was to be asked to decide the issue of liability on both the theory of strict liability and the theory of negligence. The verdict forms had been examined by counsel for VW before they were submitted. VW's reason for its failure to object at the critical times was that the verdicts did not become inconsistent until after the jury had completed them. But we cannot accept this; to do so would countenance "agreeable acquiescence to perceivable error as a weapon of appellate advocacy." McIsaac v. Didriksen Fishing Corp., 809 F.2d 129, 134 (1st Cir. 1987) (quoting Merchant, 740 F.2d at 88-89); see also Babcock, 299 F.3d at 64. By failing to timely object to the jury instructions, VW thereby waived any objection it may have had. See Fed. R. Civ. P. 51. Moreover, that failure to object greatly limits the scope of subsequent review. See Fed. R. Civ. P. 61.

Rule 51 of the Federal Rules of Civil Procedure provides in pertinent part: "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Rule 51 has been stringently enforced to the extent that a district court judge cannot waive it even with the acquiescence of counsel. Poulin v. Greer, 18 F.3d 979, 982 (1st Cir. 1994); Smith v. Mass. Inst. of Tech., 877 F.2d 1106, 1109 (1st

-7-

Cir. 1989); McGrath v. Spirito, 733 F.2d 967, 969 (1st Cir. 1984) ("[Rule 51] is binding on both the court and attorneys and neither can circumvent it."). And, of critical importance here, a failure to object as required by Rule 51 deprives the non-objecting party of review under Rule 61, either before the trial court on a post-trial motion or on appeal. Babcock, 299 F.3d at 64; Scarfo v. Cabletron Sys., Inc., 54 F.3d 931, 941 (1st Cir. 1995).

We quote extensively from our prior opinion in Babcock, 299 F.3d at 64-65:

> The only exception to nullification of appellate issues for failure to follow Rule 51 is the plain error doctrine. Smith v. Kmart Corp., 177 F.3d 19, 28-29 (1st Cir. 1999). Reversal under that doctrine requires that (1) there be error; (2) the error was "plain" (i.e. obvious and clear under current law); (3) the error affected substantial rights; and (4) the error threatened a miscarriage of justice. Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 15 (1st Cir. 1999). We have applied the plain error doctrine "stringently" in civil cases. Id. Accordingly, we will grant relief on an issue that has been forfeited on appeal only "to prevent a clear miscarriage of justice . . . or where the error seriously affected the fairness, integrity or public reputation of judicial proceedings." Romano v. U-Haul Int'l, 233 F.3d 655, 664 (1st Cir. 2000) (citations and internal quotation marks omitted). We might find plain error where "'the failure to raise the claim below deprived the reviewing court of helpful factfinding; . . . the issue is one of constitutional magnitude; . . . the omitted argument is highly persuasive; . . . the opponent would suffer special prejudice; . . . and, perhaps most importantly, . . . the issue is of great importance to the public.'" Id. (quoting Play Time, Inc. v. LDDS Metromedia

-8-

Communications, Inc., 123 F.3d 23, 30 n.8 (1st Cir. 1997) (alterations in original).

We examine New Hampshire law to determine whether there was plain error below. If New Hampshire law forbade combining a count in negligence with a count in strict liability in a tort case, the plain error doctrine might be applicable. But New Hampshire law does not prohibit submitting both negligence and strict liability claims to the jury. See, e.g., Cyr v. J.I. Case Co., 652 A.2d 685, 693 (N.H. 1995); Thibault v. Sears, Roebuck & Co., 395 A.2d 843, 849 (N.H. 1978); Greenland v. Ford Motor Co., Inc., 347 A.2d 159, 163 (N.H. 1975). The most that can be said is that submission of both claims is frowned upon. Thibault, 395 A.2d at 849 ("While . . . both counts are permitted, we do not recommend to plaintiffs that counts in both negligence and strict liability be submitted to the jury because of the confusion which is created."); see also Greenland, 347 A.2d at 163. We will not create a general rule of prohibition in light of the New Hampshire Supreme Court's reluctance to do so. We rule that it was not plain error to submit counts in both negligence and strict liability to the jury.

For the reasons set forth in Babcock we find there was no plain error here.

The only question on the issue of claimed inconsistent verdicts that does not admit of an easy solution is whether the verdicts were inconsistent. The district court held that they were not, stating:

Taking into account the New Hampshire law applicable to each claim and the evidence that was adduced at trial, the court finds that the jury's answers to special verdict questions one and three propounded in each of the plaintiffs'

-9-

cases were not inconsistent. The jury evaluated the evidence in light of each claim and answered the special verdict questions as instructed. The defendant's inconsistency claim must fail on its merits.

Our review of the district court's ruling is <u>de novo</u> because this is a pure question of law. <u>See</u> <u>Gamma Audio & Video, Inc.</u> v. <u>Ean-Chea</u>, 11 F.3d 1106, 1114 (1st Cir. 1993).

We note first that there is a distinct difference in the wording of the two questions. The question on strict liability stated:

<u>Strict Liability</u>

1. Do you find by a preponderance of the evidence that the 1986 Vanagon was defectively designed because it lacked lap/shoulder belts in the rear seating positions?

The question was limited only to defective design. The question on negligence, however, had more flesh to it:

<u>Negligence</u>

3. Do you find by a preponderance of the evidence that the defendant was <u>negligent in designing and/or testing the 1986 Vanagon</u> because it lacked lap/shoulder belts in the rear seating positions? (Emphasis added.)

Under the wording of the negligence question the jury could have found Volkswagen liable on one or more of the following grounds: because its design of the rear seat restraint mechanism did not include lap/shoulder belts; there was negligent testing by VW that did not disclose that lap/shoulder belts were needed to

-10-

restrain the torso of a passenger in the rear seat from being thrown violently forward in an accident; or that VW's negligence encompassed both design and testing.

VW has cited cases from other jurisdictions that have ruled as a matter of law that verdicts based on a finding of no strict liability in a defective design case would nullify a liability finding of negligent design. As we stated in Babcock, however,

> We need not determine whether that proposition is correct - it is enough to conclude, as we do, that New Hampshire law is not so clear on the question that it was plain error for the district court to enter judgment on the jury's verdict.

299 F.3d at 65. It is clear that under New Hampshire tort law, both strict liability and negligence questions can be submitted to the jury. See Thibault, 395 A.2d at 849; Greenland, 347 A.2d at 163. Moreover, as noted above, the negligence question submitted to the jury referenced "negligent design and/or testing" as possible grounds for a finding of liability.

Therefore, in the context of this case, we hold that it was not plain error for the district court to enter judgment upon verdicts indicating liability for negligence but not for strict liability. The jury was instructed properly on the legal elements of strict liability and negligence. The jury was also instructed that both liability questions were to be answered. It is obvious that the jury understood the instructions and its duty. It found

-11-

no liability on strict liability and did not answer the damages part of the question. No questions evincing confusion or ignorance were asked of the court by the jury. It is apparent that the jury understood that the focus of strict liability is on whether the design itself is unreasonably dangerous whereas in a negligence case the focus is on the conduct of the manufacturer, which brings us to the next issue, the evidence of VW's negligence.

## II. <u>EVIDENCE OF NEGLIGENCE</u>

VW claims that plaintiff failed "to adduce sufficient evidence to establish negligence." VW Br. at 17. It first argues that the standard of review is de novo. This position is contrary to the applicable law. VW filed a post-trial motion for a remittitur or, in the alternative, for a new trial. It also filed a motion for judgment as a matter of law or a new trial. It is these motions that determine the standard of review.

In reviewing the denial of a motion for judgment as a matter of law we must evaluate the evidence and inferences adduced therefrom in the light most favorable to the plaintiff. <u>Raymond</u> v. <u>Raymond Corp.</u>, 938 F.2d 1518, 1521 (1st Cir. 1991); <u>Austin</u> v. <u>Lincoln Equip. Assocs., Inc.</u>, 888 F.2d 934, 937 (1st Cir. 1989). Such a motion should be granted by the district court only if, as a matter of law, the evidence would lead a reasonable jury to only one conclusion  that the defendant was entitled to judgment. <u>Hendricks & Assocs., Inc.</u> v. <u>Daewoo Corp.</u>, 923 F.2d 209, 214 (1st

Cir. 1991). And the reviewing court may only reverse a trial judge's ruling denying a motion for a new trial if the district court's decision is so clearly mistaken as to constitute a miscarriage of justice. Raymond, 938 F.2d at 1522; Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989).

With this standard of review as our guide we start our analysis. Both parties agree that the applicable standard of care is that of a reasonably prudent automobile manufacturer. We first note that the front seats of the Vanagon were equipped with lap and shoulder belts. This means that this type of body restraint was known and available to VW. There was evidence by one of plaintiff's experts as follows: "There was sufficient evidence before 1986 [the year of the Vanagon's manufacture] to show that lap belts alone just can't do the job – to protect a person, you need a lap and shoulder belt."

The results and evaluation of tests performed by VW relative to the safety afforded rear seat passengers equipped with lap belts only, and those with both lap and shoulder belts, were exhibits in the case. The tests were performed by VW on April 27, 1981, which was five years prior to the manufacture of the Vanagon in which Benjamin and Nathaniel Trull were passengers. The pertinent conclusions that VW made were as follows:

### Limited protection by lap belt

The occupant restrained with lap belt was displaced forward due to elongation of the

-13-

belt. The rotational movement of the upper torso about the hip point enables head contact with the back rest in front of it.

1.  Evaluation regarding injury risk

Three-point belt

The occupant restrained with three-point belt is well protected in a frontal crash. No contact with the steering wheel, instrument panel, transverse beam, etc. (photo 5 and 6).

Lap belt

Lap-belt restrained vehicle occupants are subject to a high degree of head and cervical vertebrae injuries. The lap belt enables a rotational motion about the hip point. (Photo 7, 8 and 9).

There was testimony by one of plaintiffs' expert witnesses (D'Aulerio) that the use of a shoulder belt would have eliminated the head injuries to Nathaniel and Benjamin. The witness explained to the jury that the lap belt alone acted as a lever so that as the torso and head were bent they were accelerated forward and inclined downward at the moment of impact. The lap belt, therefore, according to the expert, was partially responsible for the head injuries received by both brothers.

Another of plaintiffs' experts, Dr. Anthony Sances, had a master's degree in physics and a Ph.D. in biomedical engineering. Dr. Sances had considerable experience in determining the cause and extent of injuries resulting from automobile collisions; he had been

-14-

involved in over a thousand cases.  It was his opinion that there would have been no head injuries to either Benjamin or Nathaniel if they had been wearing shoulder belts.

We summarize other record evidence of negligence:

It was known since the 1950's in the automotive industry that shoulder belts restrain forward movement of occupants while lap belts do not;

It was known for a long time before 1986 that lap belts alone did not offer adequate protection to occupants and that lap-shoulder belts were needed to do the job;

In 1980, NHTSA sent a letter to all motor vehicle manufacturers, including Volkswagen in which it stated, "rear seat three-point belts should be offered for additional protection to rear seat occupants.  They have been offered by Volvo, Mercedes and a few others for many years as standard equipment";

In 1986, Volkswagen sold the Vanagon in four foreign countries with rear shoulder harnesses as standard equipment;

In 1986, Volkswagen sold four out of five of its sedan type vehicles in the United States with rear lap shoulder belts as standard equipment;

Since the early 1970's, all Vanagons had anchor points which would have allowed for installation of lap-shoulder belts in the rear seats;

Volkswagen offered the same rear seat shoulder harness as optional equipment for the 1986 Vanagon sold in the United States which was standard equipment in other countries.

Based on our examination of the record, we have no difficulty ruling that there was a plethora of evidence from which

the jury could find that VW was negligent in not equipping the Vanagon sold to plaintiff with shoulder belts on the rear passenger seats and this negligence was the proximate cause of the enhanced injuries suffered by Nathaniel and Benjamin in the collision.

## III.  THE DAMAGES AWARDED NATHANIEL TRULL

VW contends that the award of $8,917,335.27 "is wildly excessive, justifying substantial reduction." VW Br. at 48. Our standard of review of damages is abuse of discretion:

> We review the denial of a motion for a remittitur for abuse of discretion. See Anthony, 17 F.3d at 493; McDonald v. Federal Laboratories, Inc., 724 F.2d 243, 246 (1st Cir. 1984). We will find an abuse of discretion only if the jury's verdict exceeds "any rational appraisal or estimate of the damages that could be based on the evidence before the jury." Milone v. Moceri Family, Inc., 847 F.2d 35, 36 (1st Cir. 1988) (quoting Segal v. Gilbert Color Systems, Inc., 746 F.2d 78, 81 (1st Cir. 1984)). We have noted that "the obstacles which stand in the path of" such claims of excessiveness "are formidable ones." Wagenmann v. Adams, 829 F.2d 196, 215 (1st Cir. 1987). Translating legal damage into money damages is a matter "peculiarly within a jury's ken," especially in cases involving intangible, non-economic losses. Id.; see also Correa v. Hospital San Francisco, 69 F.3d 1184, 1197 (1st Cir. 1995) ("An appellate court's normal disinclination to second-guess a jury's evaluation of the proper amount of damages is magnified where, as here, the damages entail a monetary valuation of intangible losses, and the trial judge, having seen and heard the witnesses at first hand, accepts the jury's appraisal."), cert. denied 517 U.S. 1136 (1996). Viewing the evidence in the light most favorable to the verdict, the jury's assessment of damages will not be disturbed unless it is "grossly excessive, inordinate, shocking to the

> conscience of the court, or so high that it
> would be a denial of justice to permit it to
> stand." Id. (quoting Segal, 746 F.2d at 80-81)
> (internal quotation marks omitted).

Smith v. Kmart Corp., 177 F.3d 19, 29-30 (1st Cir. 1999).

VW points to a number of mental, physical, and psychological problems with which Nathaniel was afflicted prior to the accident. One of the bedrock foundations of tort law is that the defendant takes the plaintiff as it finds him. See Figueroa-Torres v. Toledo-Davilla, 232 F.3d 270, 275 (1st Cir. 2000); Dotty v. Sewall, 908 F.2d 1053, 1059 (1st Cir. 1990); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 43 (5th ed. 1984). VW points out that there was conflicting evidence on how seriously Nathaniel was injured. From our vantage point we focus on the evidence favorable to the verdict. See Smith, 177 F.3d at 30.

VW claims that based on unrefuted medical evidence Nathaniel did not suffer a brain injury in the accident. To put it in VW's words: "In the crash he sustained a head injury consisting of a skull fracture and epidural hematoma without brain damage and sequelae." VW Br. at 49 (emphasis in original). But on cross-examination, VW's expert medical witness, Dr. Mendelsohn, testified that Nathaniel Trull did, in fact sustain a change in his condition, making him worse.

There was competent evidence that Nathaniel sustained a depressed skull fracture causing blood to form inside the brain that had to be drained away by an operation called a craniotomy.

-17-

There was evidence by a neuropsychologist and a clinical psychologist both of whom had treated Nathaniel before and after the accident. The opinion of these experts was that Nathaniel's head trauma exacerbated his pre-existing condition so that he is now unable to live independently and will have to live under supervised structured conditions for the rest of his life.

There was evidence by a medical economist that the life expectancy of Nathaniel was 58.1 years and that the economic loss due to the injury was approximately $5.3 million. As the district court pointed out in its order denying VW's motion for a remittitur, VW did not submit any economic evidence. The figure of $5.3 million did not include any amount for pain and suffering or other hedonic damages.

The jury was properly instructed that Nathaniel was entitled to recover for past and future, pain and suffering, mental anguish and disability.

We rule that the district court did not abuse its discretion in denying the motion for a remittitur.

## IV. THE EXCLUSION OF TEST REPORTS IN THE GERMAN LANGUAGE

This issue need not detain us long. VW offered as exhibits test reports in the German language. Plaintiff objected and the court informed VW that the reports would not be admitted unless they were translated into English. This was not done. The

district court did not abuse its discretion in excluding the documents.

**The judgment below is affirmed. Costs on appeal awarded to plaintiff.**

**- Concurring Opinion Follows -**

-19-

**CAMPBELL**, <u>Senior Circuit Judge</u>, **concurring.** I concur in the judgment. I write separately because I do not understand why my colleagues, after finding that VW did not preserve the issue of verdict inconsistency, have gone on to discuss that issue to the extent they do, even suggesting a likely consistency between the jury's two verdicts. Whether or not the jury's responses on defective design and negligence were inconsistent, VW's failure to preserve the inconsistency issue, and the absence of plain error, makes the inconsistency issue irrelevant. New Hampshire law is so clouded as to make it undesirable for a federal appeals court to speculate unnecessarily in ways that might later be seen as pronouncements on one or another facet of the inconsistency issue.

I fully agree with my colleagues that by failing to object at the proper time to the court's relevant instructions and jury forms, and by failing to object on inconsistency grounds after the verdict was read and before the jury was dismissed, VW waived any claim of verdict inconsistency. <u>See</u>, <u>e.g.</u>, <u>Howard</u> v. <u>Antilla</u>, 294 F.3d 255, 251 (1st Cir. 2002); <u>Bonilla</u> v. <u>Yamaha Motors Corp.</u>, 955 F.2d 150, 155-56 (1st Cir. 1992). And I further agree there was no plain error. The latter is not simply a question of whether the court acted correctly under New Hampshire law. Even a clear and obvious error of state law would not, by itself, amount to plain error. The error would not be "plain", so as to excuse VW's failure to object, unless the error had also resulted in a miscarriage of

-20-

justice.  See, e.g., United States v. Olano, 507 U.S. 725, 733 (1993); Chestnut v. Lowell, 305 F.3d 18, 20 (1st Cir. 2002).  Here I can see no miscarriage of justice regardless of whether or not the jury findings on defective design and negligence were inconsistent. It is therefore entirely unnecessary for this court to suggest there was in fact consistency, in particular because the negligence question submitted to the jury referenced negligent testing as well as negligent design.  Reconciling the finding of no defective design with a finding of negligent testing, on this record, is not much easier than reconciling it with a finding of negligent design.  To be sure, New Hampshire apparently permits cases to be submitted simultaneously on defective design and negligence theories, but this does not determine what should be done if the jury's results seem contradictory in a particular case.

The overriding point here is simply that VW did not preserve the inconsistency issue.  That should end the matter. While the jury's logic with respect to its answers on the two counts is indeed debatable, there is no obvious injustice to entering judgment on the verdicts, as the court did.  The jury's intentions were entirely clear - it found liability predicated on negligence, and there was ample evidence to support such a finding.  Whatever the inconsistency of its negative finding on defective design, that finding (if inconsistent) is most reasonably seen as the product of confusion as to the elements of the defective design count rather

than as casting doubt on the validity of the jury's resolution of the negligence count.  There is nothing fundamentally unjust about entering judgment on both counts.  If VW wanted to argue the inconsistency issue, it needed to preserve its rights.